FIRST NATIONAL BANK OF NEW MILFORD *vs.* TOWN OF NEW MILFORD.

C, who was at the same time treasurer of a town and cashier of a bank, took $3000 from the funds of the bank for his own use and executed a note to the bank for the amount as treasurer of the town, the note being entered upon the books of the bank in the same manner with other notes taken for money loaned. C was the principal financial manager of the bank, and had been allowed and accustomed to make loans at his discretion without consulting the directors. He had already, without their knowledge, embezzled the funds of the bank to a large amount. The town had been in the habit of borrowing money at this bank and elsewhere, and upon notes executed by the town treasurer, and these loans had been reported to the town in the annual reports of the treasurers, which reports had been accepted by the town. Occasional votes of the town for thirty years had authorized the treasurers to borrow money for the use of the town, generally for some particular purpose ; but except in one instance the treasurers had acted under the direction of the selectmen of the town. In a suit by the bank against the town upon the note, it was held—

1. That the votes of the town and the reports of the town treasurers were admissible in evidence upon the question of the authority of C to borrow money for the town.

2.   (By a majority of the court.) That as C was engaged in an extensive fraud upon the bank, and in view of all the facts, it was fairly presumable that he made the note in the form in which he did as a false representation and cover by which to perpetrate a fraud on the bank, and with no intention to bind the town.

3.   But that, if he intended to bind the town, his own fraud as treasurer was known to him as agent of the bank, and was therefore the knowledge of the bank, and that the plaintiffs therefore could not recover.

ASSUMPSIT, on a note of $3000, dated December 28th, 1866, executed by " J. J. Conklin, treasurer of the town of New Milford," payable to the plaintiffs or their order on demand, and held by them ; tried in the Superior Court on the general issue closed to the court.   The following facts were found by the court.

At the time the note was executed Conklin was treasurer of the town of New Milford, and had been such from the year 1860 with the exception of one year, and continued to be so until September, 1867, and was also the cashier of the bank of the plaintiffs from the year 1858 down to September, 1867.   He executed the note on the day of its date and then drew the money on it from the bank, but appropriated the money to his own use and not to the use of the town, and the town had no benefit from it.   The money was used by him in private speculations in New York.   He also used funds of the bank about that time in his own private speculations to the amount of about fifty thousand dollars, and eventually lost the same.   The misappropriation of these moneys first became known to the bank, the town and the public in September, 1867.

Neither of the selectmen or other officers of the town had any knowledge of the existence of the note in suit until September, 1867, when the defalcations became public.   At the date of the note there was on hand in the treasury of the town about $1,385, and the town was not then in want of money.   The note was regularly entered in the books of the bank by Conklin, and was filed by the clerk and placed among the papers of the bank of a similar kind.   It was, and long had been, the practice of the cashier to discount paper and to

cash notes without consulting the directors, and he was, and long had been, the principal financial officer of the bank.

The annual reports of the treasurers of the town from the year 1859 to the year 1866 inclusive, showing numerous cases of money borrowed by the treasurers, which reports were accepted by the town, were read in evidence by the plaintiffs, the defendants excepting to the same. Some of these loans had been obtained at the plaintiff's bank. Numerous votes of the town with regard to borrowing money for the use of the town were also laid in by the plaintiffs, extending back for thirty years before the year 1866, in many of which the town treasurer was authorized to borrow money for the wants of the town, the amount generally being limited and in most cases the object for which the money was to be borrowed being stated. In connection with these reports and votes the plaintiffs proved that, whenever money was borrowed by the town, the uniform practice had been for the treasurer to make notes therefor which were usually in form substantially like the one in suit, and that all these notes, except the one in suit, had been paid by the town; but it appeared that in every case but one the treasurer acted by the direction and under the advice of the selectmen, the direction being oral and the selectmen not usually communicating in person with the lender. There was no proof that the selectmen had directed the treasurers to borrow money when there was money in the treasury sufficient to meet present wants, or when the money was not needed for the use of the town.

Upon these facts the plaintiffs claimed that Conklin, as treasurer, had authority to bind the town by the note in suit, and that the town had held their treasurers out to the world as so authorized, and upon all the facts the plaintiffs claimed that they were entitled to recover on the note.

The defendants objected to all the evidence offered by the plaintiffs to prove the authority of Conklin to bind the town by implication, or in any way except by express authority; and the defendants claimed from the votes so offered in evidence by the plaintiffs, that Conklin had no authority to make and deliver the note in question without the direction of the

selectmen, and that the note was, as to the defendants, without consideration, and that Conklin committed a fraud in the execution of it, and that the plaintiffs were bound by his acts and had notice of his fraud and of the want of consideration through Conklin as their cashier and agent, and also had notice in the same. way that the moneys received by him as the avails of the note were for his own use and not for the use of the defendants, and that he had no authority to bind the town to the payment of the note without the direction of the selectmen. And the defendants for these reasons claimed that they were not liable in the action, and that the note was never executed by them.

The question whether the evidence objected to was admissible and the question what judgment should be rendered in the case, were reserved for the advice of this court.

*O. S. Seymour* and *E. W. Seymour*, for the plaintiffs.

The plaintiffs claim that they are bona fide holders of the note in suit, that the defendants' treasurer took their money by means of the note, without their knowledge that the money was to be misappropriated, and that, as between the plaintiffs and the town, the town treasurer is to be deemed to have had full power to borrow the money and give the note. The case involves three distinct questions : 1st. As between the parties to this suit, had Conklin power to borrow the money for which this note is given ? 2d. Are the plaintiffs bona fide holders of the note ? 3d. Is the note in such form as to bind the town ?

1. Conklin had authority to borrow the money, as between the plaintiffs and the town. As between the treasurers and the town there were limitations of their power of borrowing. Thus, in the vote of 1836 there is a limitation in respect to the amount to be borrowed, $500, and the power is limited to its being done at the request of the selectmen. These limitations are binding as between the treasurer and the town ; that is, the treasurer would, without doubt, be liable to the town for a disregard of these limitations ; but suppose that, after borrowing of *A* $500 under this vote, the treasurer applied to *B*

for $500 under the same vote, representing that he had author-
ity so to do, and that his power had not been exercised by
already borrowing $500, and *B* in good faith without knowl-
edge of the previous loan lent the treasurer a second $500.
Would not the town be bound by the second note as well as
the first? Would *B* be in any fault for trusting the represen-
tations of the treasurer in respect to a matter concerning
which he could by no diligence ascertain the real fact? In
regard to the extrinsic fact whether the money had already
been borrowed *B* cannot be presumed to know. He would
resort at once for knowledge to the treasurer himself, who
would be the direct and reliable source of knowledge. If
the defendants' agent makes false and fraudulent representa-
tions in the course of his business as agent they clearly ought
to bear the loss occasioned by them. *Hern* v. *Nichols*, Salk.,
289 ; *Farmers & Mechanics' Bank* v. *Butchers & Drovers'
Bank*, 16 N. York, 125. In the vote of 1853, the limitation
upon the treasurer's power to borrow is, " such sums as are
needed to defray the expenses occasioned by the late flood,
not exceeding in the whole $3,000." Suppose the treasurer
borrow more than is thus needed, is the lender to suffer? Sim-
ilar considerations apply to the votes of 1854 and 1855, and
especially 1859. By the latter vote, which is still in force,
the treasurer is authorized to borrow " what sum the select
men may require for the interests of the town." May not a
lender rely upon the treasurer's representation that the money
is thus required? Similar considerations apply to the vote
of 1863. The money is to be borrowed and then paid to those
who may be drafted. Is the lender bound to see to the appli-
cation of the money? On examining the treasurer's reports
it will be seen that the reports do not show that any of these
limitations are regarded. Since 1863 no votes for borrowing
money have been passed, but in 1864 a large sum was bor-
rowed of these plaintiffs by the treasurer, and paid in 1865
by the treasurer. In 1865 the town borrowed $5,937 of
these plaintiffs without any vote authorizing it except the vote
of 1863 and those prior to it, and the report of the treasurer
stating such borrowing is accepted by the town. In 1866 the

town in like manner borrowed $8,500 of these plaintiffs, and the report of the treasurer stating such loan is accepted without qualification. In December, 1866, the treasurer borrowed the sum now in dispute, and the town now claims that he had no authority so to do. Unless some bad faith is justly chargeable upon these plaintiffs they are entitled to recover the money so lent. The authority to borrow was full, and whether the town needed the money or not, and whether the treasurer had the direction of the selectmen or not, and whether the money was misappropriated or not, is immaterial, unless the plaintiffs are to be treated upon the facts found as justly chargeable with knowledge of those circumstances.

2. And this brings us to the second point in the case; are the plaintiffs bona fide holders of the note? Conklin of course knew that he could not properly exercise the authority given him to borrow the money, and he was not only town treasurer, but also cashier of the bank, and the claim of the defendants is that his knowledge is in law the bank's knowledge, and that thus the bank is to be deemed to have lent the money in bad faith. But in fact the bank, that is, its directors, had no notice of any infirmity in the note. They find the note duly executed and duly filed and regularly entered in the books of the bank and they acquiesce in its being discounted. The bank knew of no wrong. The misappropriation of the money borrowed first became known to the bank in September following. In all the transaction Conklin in fact acted as treasurer of the town, and in law is to be deemed so to have acted. He executed the note as treasurer and as such drew the money on it from the bank. The misappropriation is after the money is so drawn. In all this Conklin does nothing as cashier. He indeed acts as bookkeeper in entering the note on the books of the bank, but the clerk files the note and places it in its appropriate file. And in law he could not act in respect to this note as agent of the bank. He offers the note of the town for discount as treasurer of the town, and he is not agent of the bank to discount his own paper. Whatever may have been the practice of the cashier in respect to discounting paper and cashing notes without consulting the

directors, and however much he may have been the financial officer of the bank, an authority to discount his own notes will not be inferred. In respect to this note the discount of it was the act of the directors exclusively, and Conklin acted simply as the person offering the paper. In this particular transaction therefore, his knowledge is not imputable to the bank. In other matters he was agent of the bank, but in this he was no agent and could be no agent. The case does not find an act connected with this note done by him as agent of the bank. If the note had been formally presented by him to the board of directors for discount, and been by them formally acted on and accepted, then he would not have acted as agent of the bank in any manner connected with the note. In such a transaction he takes no part as agent of the bank, but acts merely as treasurer of the town, offering the note for discount. The discount is the act of the directors, and although it is not found that all these formalities were observed, yet the legal effect is the same. Conklin had no authority to discount his own notes, and the discount must be deemed the act of the directors.—But if we are wrong thus far under this head, and if we admit that the knowledge of the agent is imputable to the principal, so that the principal is to be regarded as guilty of whatever fraud his agent is guilty of, then let us apply this rule to the defendants. Their agent knew that the bank agent had no right to take the money from the bank on this note. The town therefore as principal had knowledge that their agent was combining with our agent to draw money improperly from the bank on the town's note, and the agent's fraud is the fraud of the principal. The town thus being chargeable with knowledge of the fraud which our agent was perpetrating on us, cannot set up such fraud as a defence to the note. The truth is, in a case where the party perpetrating the fraud is agent of both parties, this doctrine of imputed knowledge of the principal has no application. In truth neither of the principals have the knowledge, and the case ought to stand on that ground, but the same result is reached if both principals are regarded as having the knowledge. The sum of the matter is that the town's agent has taken our

money, and after he had got it as agent of the town he makes the misappropriation, and the town ought to suffer the loss.

3. This note is in proper form to bind the defendants, especially upon the proof that notes thus drawn have always been used in borrowing money for the town and treated as binding the town. *Shelton* v. *Darling*, 2 Conn., 435 ; Story on Agency, § 154.

*Graves* and *McMahon*, for the defendants, cited Story on Agency, §§ 307*a*, 319, 319*a* ; *Delafield* v. *State of Illinois*, 2 Hill, 159 ; *Supervisors of Rensselaer County* v. *Bates*, 17 N. York, 242 ; 1 Parsons on Cont., 5th ed., 41 to 45 ; *Bridgeport Bank* v. *N. York & N. Haven R. R. Co.*, 30 Conn., 231; *Bank of U. States* v. *Adams*, 2 Hill, 451 ; *North River Bank* v. *Aymar*, 3 id., 262 ; *Grant* v. *Norway*, 10 Com. Bench, 665 ; *Coleman* v. *Riches*, 16 id., 104.

BUTLER, J. The facts in this case are very simple and the law is equally so, and there is no aspect of them under which the defendants can be subjected upon the note.

Conklin was treasurer of the town, and cashier and loan officer of the bank. It is immaterial whether or not he had authority, as treasurer of the town, to draw the note and obtain the loan without the advice and assent of the selectmen, if the money had been needed by the town. And immaterial whether the evidence offered and objected to was admissible or not. As the point is made however, we decide that it was admissible.

Whether he had authority to make a loan or not is immaterial because it is found that the town was not in want of the money, that the treasury was supplied, and that he intended the money for his own use, and therefore, that if he intended to pledge the credit of the town, the act was a gross fraud upon the town.

Did he then intend to pledge the credit of the town to the bank ? A majority of the court think not. Conklin was then engaged in an extensive embezzlement of the funds of the bank, and liable to detection by its officers if they examined

its accounts. That fact, and the form of the note, and the presumption that he would not unnecessarily commit another offense, and that he would not contemplate going through the unnecessary form of contracting by himself, as treasurer of the town, with himself as financial officer of the bank, under the circumstances in which he was placed, indicate that he drew the note, entered it in the books, and caused it to be filed by the clerk, as a false representation and cover, precisely as he made other false representations and false entries, intending to restore the money and take out the note, and not intending to onerate the town. If that is so, there was no meeting of minds and no purchase of the note or contract of loan which will sustain this action.

Assuming however that there was a contract of loan, it was made by Conklin as agent of the town with Conklin as agent of the bank. If Conklin, as agent of the town, had applied to the directors for a loan, offering the note and telling them that he had drawn it, not for the benefit of the town, but for his own benefit, without consulting the officers of the town, and when there was a sufficient supply of money in the treasury, it must be conceded that the board would in making the loan have been *particeps criminis* in the fraud, and the bank could not recover in this action. We cannot perceive that that case would differ from this. The contract, if any was made, was made by Conklin on behalf of the bank. No other mind but his met the mind of the agent of the town in making the contract. He as agent of the bank had full knowledge therefore of the fraud; and now the bank, if they ratify his contract and confirm his agency, must accept his knowledge and be bound by it, precisely as if the loan had been made and the knowledge had by the board of directors.

We think it very clear, therefore, in whatever aspect the case may be viewed, that the note in question is not a valid note against the town in the hands of the plaintiffs, and judgment must be advised for the defendants.

In this opinion the other judges concurred.