Platt *v.* Birmingham Axle Company.

ZENAS M. PLATT *vs.* THE BIRMINGHAM AXLE COMPANY AND OTHERS.

A married woman owning stock in a manufacturing corporation, which stood in her name, joined with her husband in a written assignment of it to *A*, to secure a loan made by him to the husband. The certificate of the stock, which contained a provision that the stock should be transferred only on the books of the corporation upon surrender of the certificate, was delivered to *A*, but no transfer was made on the books. *A* gave no notice to the corporation, and it had no notice of the transaction except so far as it was chargeable with the knowledge of the husband, who was at that time its secretary. Two years after the corporation made a loan to the wife, at the request of both husband and wife, and upon the agreement of both that the stock should be transferred to it on the books as security. This transfer was soon after made by the wife alone. The agent of the corporation at the time asked for the certificate and was told by her that it was at her house and that she would get it, and he did not enquire further. By statute the corporation had a lien on the stock of its

members for any debt due from them.   Since the transaction the wife had died and the husband had from the first been insolvent.   Upon a bill in chancery brought by *A* to compel the corporation to transfer the stock to him, it was held—

1. That the knowledge of the husband, while secretary of the corporation, was not the knowledge of the corporation.
2. That the corporation, although organized for manufacturing purposes, was not going beyond its powers in making, incidentally, such a loan.
3. That independently of the transfer of the stock to the corporation, it had a statutory lien on the stock for the debt due from the wife, and that this lien took precedence of the lien of the petitioner.
4. That the neglect to require the wife to produce and surrender the certificate at the time of the loan and transfer, was not sufficient to prevent the lien from attaching.

The stockholders of the corporation had all agreed to pay into the treasury an assessment on their stock to supply funds for the company.   The husband acted with his wife in the arrangement, and it was agreed between them and the corporation that she should be credited with the amount of her assessment and that the corporation should hold the stock transferred to it as security therefor.   Held—1. That as all the stockholders agreed to the assessment, no question could be made by *A* as to the right of the corporation to levy it.   —2. That the claim of the corporation for the amount due on the assessment constituted a valid lien upon the stock.

BILL IN EQUITY to compel the conveyance of certain stock in a manufacturing company or the payment of its value; brought to the Court of Common Pleas of New Haven County.   The respondents were the Birmingham Axle Company, William Hawkins, administrator of the estate of Lucie P. Colt, and Charles F. Colt, surviving husband of the said Lucie.   The following facts were found by a committee.

Lucie P. Colt died on the 21st day of May, 1872.   She had intermarried with Charles F. Colt some time before the 1st of January, 1869, and they had lived together until her death.   On the 10th day of July, 1869, she was the owner of eighty-five shares of the capital stock of the Birmingham Axle Company, which was a joint-stock company organized under the laws of this state, and located in the village of Birmingham, in the town of Derby, which shares were standing in her name on the books of the company, and so continued to stand until the several claimed transfers hereinafter mentioned.   On and prior to the 10th day of July, 1869, Royal M. Bassett was president of the company, and Charles

F. Colt was its secretary. Bassett has ever since been president, and Colt continued to be secretary until the 18th day of March, 1872, when F. N. Hall was elected secretary, who continued to be secretary until January, 1873. Royal M. Bassett and Theodore S. Bassett were brothers of Mrs. Colt, and Theodore S. Bassett was during all the time covered by the transactions to be stated, uninterruptedly one of the directors of the company. On the 10th day of July, 1869, the company issued a certificate of stock to Mrs. Colt, under the hands of its president and secretary, the certificate being for fifty shares of full paid stock, and containing a provision that the stock should be transferable only on the books of the company, upon the surrender of the certificate. On the 28th day of October, 1869, Charles F. Colt, being wholly insolvent, which fact was well known to the petitioner and to the Axle Company, applied to the petitioner for a loan of money, and in pursuance of a previous agreement between them, Colt borrowed of him the sum of $625, and gave his note therefor, and left with the petitioner, as a pledge of the fifty shares of stock as security for the payment of the note, the following document:—

"I hereby pledge fifty shares of the stock of the Birmingham Axle Company with certificate No. 11 attached hereto, as security for the payment of a certain note drawn by Charles F. Colt in favor of Zenas M. Platt, dated this day, at six months, for six hundred and twenty-five dollars.. I pledge also all my possessions, real or personal, now or hereafter, for the payment of said note. Birmingham, Oct. 28th, 1869. LUCIE P. COLT, CHAS. F. COLT."

At the same time Colt left with the petitioner the certificate before mentioned for the fifty shares of stock. Colt and the petitioner both supposed that the papers pledged the stock for the loan, and the petitioner paid the money on the faith thereof, and would not have parted with his money unless he had supposed that he was secured on the stock. On the 12th day of April, 1870, Colt paid on the note the sum of $200 ; on the 29th day of June, 1870, the sum of $100 ; on the 3d day of May, 1871, interest to date, and on the 15th day of

April, 1872, interest to that date. Colt is, and has been since the 28th of October, 1869, wholly insolvent and irresponsible, and is now in the city of New York. No other portion of the note has been paid, and there are no means of enforcing payment except by appropriating the stock.

The petitioner, some time prior to December 21st, 1872, and within the time allowed for presenting claims against Mrs. Colt's estate, presented his claim to Hawkins the administrator, and demanded payment, which was refused. On the 15th day of April, 1873, the petitioner made demand of the secretary of the Axle Company to transfer to him stock belonging to Mrs. Colt's estate, to the number of fifty shares. No such transfer was ever made. There was no knowledge at that time on the part of the petitioner that the stock had been transferred to the company.

On the 9th day of April, 1872, an oral contract was made by Mr. and Mrs. Colt with the company that fifty-one shares of her stock should be transferred to the company, for which the company was to credit the claimed assessments (hereinafter explained) then due and held against the fifty-one shares of stock, and that the company should advance to her the further sum of $800. The stock was thereupon transferred by her on the books of the company to Royal M. Bassett in trust for the company. This arrangement was entered into upon the request of both Mr. and Mrs. Colt, and representations were made by them prior to and at the completion of the arrangement, that the money so raised was to be used by them to pay bills for necessaries of life. The agreement was made on the part of the company by Theodore S. Bassett. He had no actual notice of the pledge of the stock to the petitioner. The amount credited by the company as payment of the assessment was $471.37, besides which they paid her $3.63 in cash, making the whole, including the $800 loaned, $1,275.

The stockholders of the company, by a mutual parol agreement and understanding among themselves, had laid the assessments upon the capital stock of the company. Mr. and Mrs. Colt both agreed thereto. The assessments so laid upon

the capital stock have all been paid in cash, in pursuance of such assessment, and the assessment upon the stock of Mrs. Colt was by the agreement to be paid in the same manner. At the time of the agreement and of the transfer of the fifty-one shares to Royal M. Bassett in trust for the company, Theodore S. Bassett asked Mrs. Colt where the old certificate of the fifty shares was, referring to certificate No. 11. She replied that it was at her house and that she would get it, and he fully believed that it was in her possession. He had been at one time the treasurer of the company. Royal M. Bassett had at no time before the stock was transferred in trust to him, any actual knowledge of the pledge to the petitioner, or of the circumstances attending it, nor had Mr. Hall, the secretary of the company, any such knowledge. But the company and its officers well knew the contents of the certificate, and that the same had not been surrendered, lost, or destroyed. The company has never adopted any by-laws regulating the manner in which stock should be transferred on its books. The margin of the stock book showed at the time of the transfer of the fifty-one shares to the company, that the certificate No. 11 was outstanding. Sixteen shares of the stock of the company still stand in the name of Mrs. Colt, and have been continually in her name since the 28th of October, 1869. But Mr. Hawkins, the administrator of her estate, has never exercised or attempted to exercise ownership over the stock standing in her name, because of the claimed lien of the company on account of the assessments and the advancement of the $800. On the 9th day of April, 1872, Mrs. Colt sold, and there was transferred on the books of the company, to Royal M. Bassett and Theodore S. Bassett, each, nine shares of the stock owned by her at that time. The transfer to Royal M. Bassett as trustee for the company, was made by her solely; Mr. Colt not joining in the written transfer on the books, but being present and having knowledge of the same.

Mrs. Colt left an estate inventoried at $1,774. She had at the time of the transfer on the 9th of April, 1872, no other shares of stock in the corporation except the eighty-five

shares, and after the transfer to Royal M. Bassett and Theodore S. Bassett of nine shares each, she had sixty-seven shares only. Fifty-one of these shares were the shares transferred in trust to Royal M. Bassett for the corporation, and sixteen shares still stand in her name.

The terms of the petitioner's certificate tended to induce him to believe that while he held the same it was safe, and that the stock could not be transferred without a surrender of the certificate.

Upon these facts the case was reserved for the advice of this court.

*H. B. Munson*, for the petitioner.

1. The written pledge, with the delivery to the petitioner of the certificate, convey a clear equitable, if not a full legal title against Mrs. Colt's estate and against this corporation. *Bridgeport Bank* v. *N. York & N. Haven R. R. Co.*, 30 Conn., 231; *Colt* v. *Ives*, 31 id., 25; *N. York & N. Haven R. R. Co.* v. *Schuyler*, 34 N. York, 80; *Ex parte Straffon's Exrs.*, 10 Eng. L. & Eq., 275; *Bargate* v. *Shortridge*, 31 id., 44.

2. A certificate of stock issued by a corporation is now regarded as the evidence of the holder's title, and the clause upon its face, "transferable only on their books on surrender of this certificate," as giving to the certificate a certain negotiable character; and not, as has been sometimes held, to be a clause for the protection of the corporation. *N. York & N. Haven R. R. Co.* v. *Schuyler*, 38 Barb., 535; *Same* v. *Same*, 34 N. York, 80. The corporation is held to be liable to the holder of a certificate of stock for having permitted the stock to be transferred on the books of the company to an innocent purchaser.

3. The corporation deliberately violated its own promise issued upon the face of the certificate, and transferred to itself fifty-one shares of the stock, and permitted eighteen shares more to be transferred to Theodore S. Bassett, one of its directors, and to Royal M. Bassett, its president. Their books showed that this certificate was outstanding, and Theodore S. was actually informed of it at the time by Mrs. Colt.

The law will imply notice in such a case. They carelessly relied upon her promise that she would surrender the certificate. Let them look to her estate to make them good.

4. The corporation had actual knowledge of the pledge. Mr. Colt was their secretary when the pledge was given, and up to about the time of the transfer to the corporation. His knowledge was their knowledge, and if he neglected to inform his fellow officers, his negligence lies at their door. *Lickbarrow* v. *Mason*, 2 T. R., 70; *Ashby* v. *Blackwell*, 2 Eden, 299. The company ought to answer for their servant's negligence. In *Hall* v. *City of Buffalo*, 40 N. York, 196, the court say, "A corporation consists of officers and agents, some of whom must represent the corporation in such a sense as to render him a proper party to receive notice in behalf of the corporation." If Platt was required to give notice, to whom should he give it?

5. It is immaterial whether the company had a by-law relating to the transfer of stock or requiring the surrender of the certificate. The surrender clause in the certificate was acted upon by Platt, and the corporation should be estopped from denying its force. Mr. Colt, then secretary, induced Platt to believe that so long as he had the certificate (without doing anything more) he was safe. *Bank of New Milford* v. *Town of New Milford*, 36 Conn., 97; *Farmers' & Mechanics' Bank* v. *Butchers' & Drovers' Bank*, 16 N. York, 125; *Mead* v. *Bunn*, 32 id., 275; *Hern* v. *Nichols*, Salk., 289.

6. The corporation had no power to become pawn brokers, to buy, or to receive its own stock in pawn. They had power merely to carry on the manufacturing business for which they were organized. An advancement to the wife as a purchaser of her stock or a loan upon it, to enable her to raise funds to pay an existing debt previously contracted even for necessaries of life, is not within the statute. And her signature to the transfer without her husband's is a mere nullity. His oral assent is inadmissible and amounts to nothing.

7. The claimed assessment resting in parol, without any

vote or record, is no assessment for which the corporation could claim a lien on the stock of any stock-holder. It is a mere oral agreement among the stock-holders to contribute a certain sum. Could the corporation as a corporation maintain an action on such a promise? If valid, being made while Platt held the certificate and without his knowledge, it could not affect his stock.

8. If Platt has lost his security by the wrongful act of the pledgers, then the administrator ought in equity to be compelled to make us good out of the estate by allowing our claim or by disencumbering the stock which was pledged to us.

*Torrance*, with whom was *Wooster*, for the respondents.

1. The stock was neither pledged nor mortgaged to the petitioner, nor has he any claim upon it, legal or equitable. 1st. "A pledge is a bailment of personal property as security for a debt, or for the performance of some engagement." Story on Bailment, § 286. The very essence of the contract of bailment is *delivery*. Story on Bailment, § 297 ; Tyler on Usury, 506. The stock in question was never *delivered* to the petitioner. It could only be delivered by a transfer or assignment in the mode required by law. *Dutton* v. *Conn. Bank*, 13 Conn., 498; *Shipman* v. *Ætna Ins. Co.*, 29 id., 246 ; *Colt* v. *Ives*, 31 id., 25 ; *Brewster* v. *Hartley*, 37 Cal., 15 ; *Wilson* v. *Little*, 2 N. York, 447 ; *N. York & N. Haven R. R. Co.* v. *Schuyler*, 34 id., 80 ; *McNeil* v. *Tenth National Bank*, 46 id., 331 ; *Palmer* v. *Merrill*, 6 Cush., 282. 2d. Nor was the instrument a mortgage. It contains no words of sale, express or implied. The legal title remained in Mrs. Colt. All the essentials of a mortgage are wanting. Story on Bailment, § 287 ; *Parshall* v. *Eggart*, 52 Barb., 369. The writing and certificate amount to no more than a mere contract to pledge, and furnish no foundation for any claim legal or equitable upon the stock in question.

2. The credit and advancement were made in good faith upon the credit of the stock standing in the name of Mrs. Colt, and without notice of any claim of the petitioner to the

stock; and the corporation has a claim by way of lien and equitable mortgage upon the stock of superior equity to that of the petitioner, even if the stock was pledged to him as claimed. 1st. The assessment upon the stock was properly made. All the stockholders assented to it, and paid their assessment in cash. If not properly made, yet it has been ratified by the corporation and acted upon in good faith, and it is too late now to call it in question. Mrs. Colt would have been estopped from questioning the validity of the assessment, and the petitioner is in no better position than she would have been if living. 2d. The advancement to Mrs. Colt upon the credit of her stock was a proper exercise of corporate power. The amount loaned was small, and the loan incidentally made. It was not an attempt to carry on the lending of money as a business. 3d. Even if the corporation could not legally advance money, nor lay the assessment, yet the assessment having been made, and paid in and assented to by all parties in interest, and the money having been advanced to Mrs. Colt in good faith, it would be inequitable that her stock should not be holden for the money advanced to her upon the faith of that stock. *Bradley* v. *Ballard*, 55 Ill., 413 ; *Lester* v. *Howard Bank*, 33 Maryl., 558. 4th. The corporation paid its money on the credit of the stock in good faith, and without notice of any claim of the petitioner. No actual notice is claimed. The knowledge of Mr. Colt was not the knowledge of the company. *Farmers' & Citizens' Bank* v. *Payne*, 25 Conn., 444 ; *Farrel Foundry* v. *Dart*, 26 id., 376. The absence of the certificate was not constructive notice. No by-law required its return. The company made all reasonable effort to have it returned. 1 Story Eq. Jur., §§ 399, 400, and notes. The books of the corporation were the appropriate place to determine the ownership of the stock. *Dutton* v. *Connecticut Bank*, 13 Conn., 498. 5th. Under the facts found, the Birmingham Axle Company has a two-fold claim upon the stock superior in equity to that of the petitioner, to wit, by way of lien under the statute, (Gen. Statutes, tit. 7, sec. 408,) and by way of equitable mortgage under the transfer in trust to R. M.

Bassett.    6th.  The petitioner has been guilty of laches, and if loss occurs thereby, he and not the corporation should bear the loss.    Where one of two innocent parties must suffer loss, he through whose negligence or folly the loss occurred must bear it.    1 Story Eq. Jur., 385;  *Cady* v. *Potter*, 55 Barb., 463 ;  *Shipman* v. *Ætna Ins. Co.*, 29 Conn., 246 ;  *Colt* v. *Ives*, 31 id., 25.

PARDEE, J.   On the 28th day of October, 1869, the petitioner loaned $625 to Charles F. Colt, one of the respondents, who gave his note therefor.   As security for the payment thereof Lucie P. Colt, his wife, delivered to the petitioner a certificate for fifty shares of the stock of the respondent corporation, the Birmingham Axle Company, belonging to her and standing in her name, together with a writing of which the following is a copy :—

" I hereby pledge fifty shares of the stock of the Birmingham Axle Company, with certificate No. 11 attached hereto, as security for the payment of a certain note drawn by Charles F. Colt in favor of Zenas M. Platt, dated this day, at six months, for six hundred and twenty-five dollars.   I pledge all my possessions, real or personal, now or hereafter, for the payment of said note.   Birmingham, Oct. 28th, 1869. Lucie P. Colt, Charles F. Colt."

Of this transaction the respondent corporation had no notice until on or about the 15th day of April, 1873, when the petitioner for the first time notified it thereof and requested it to transfer the fifty shares of stock to himself.

We say *no notice*, notwithstanding the fact that Mr. Colt held the office of secretary of the corporation from July, 1869, to March, 1872; for under the circumstances of this case his knowledge of the transaction is not to be imputed to the corporation.

In *Farmers' & Citizens' Bank* v. *Payne*, 25 Conn., 449, STORRS, C. J., says: The general rule on this subject is, that notice of a fact to an agent is notice to the principal, if the agent has knowledge of it while he is acting for the principal in the course of the transaction which is in question.   *      *

\* \* \* In all of the cases where the question was whether the principal was to be affected by the knowledge of his agent, the latter possessed such knowledge while he was acting for the former. There is none in which it has been held, or indeed claimed, that such knowledge would have that effect while he was not so engaged, nor can we conceive any good reason for the adoption of such a principle."

In *The Bank of U. States* v. *Davis,* 2 Hill, 451, NELSON, C. J., said : " I agree that notice to a director or knowledge derived from him while not engaged officially in the business of the bank can not and should not operate to the prejudice of the latter. This is clear from the ground and reason upon which the doctrine of notice to the principal through the agent rests. The principal is chargeable with this knowledge for the reason that the agent is substituted in his place and represents him in the particular transaction ; and as this relation, strictly speaking, exists only while the agent is acting in the business thus delegated to him, it is proper to limit it to such occasions."

In *Winchester* v. *Baltimore & Susquehanna Railroad Co.,* 4 Maryland R., 231, the court held that where the president of a corporation executed to some of its directors, in trust for it, a mortgage of land to which his wife had an equitable title by unrecorded deed, the same having been paid for out of her separate estate, the mortgagor's knowledge of his wife's equities will not on account of his official position be considered as knowledge of the corporation and cannot affect its rights unless communicated to its managing agents. Neither the acts nor the knowledge of the officer of a corporation will bind it in a matter in which he acts for himself and deals with the corporation as if he had no official relations with it.

Judge STORY, speaking of certain judicial opinions upon this subject, says : " Perhaps it will be found that if either of these distinctions is to prevail it will sap the foundations on which the security of all banking and other moneyed corporations, if not of all corporations, have been hitherto supposed to rest; to wit, that no act, or representation, or

knowledge, of any agent thereof, unless officially done, made or acquired, is to be deemed the act, representation or knowledge of the corporation itself." Story on Agency (6th ed.), § 140 *b*.

Colt borrowed the money from the petitioner for his individual use. As the husband of Lucie P. Colt he knew of the delivery of the stock certificate to him and joined her in signing the paper referred to. This knowledge came to him in no manner and in no sense as the secretary of the Birmingham Axle Company; his secretaryship in no degree operated to make him a party to the act or to bring him and the petitioner together. The corporation had no interest in the matter; it was not in legal identity with him, either as to the act or his knowledge respecting it; he was not an agent for it in the transaction which made him a witness to the delivery of the certificate; and he ceased to be its secretary and had left its service prior to the time when the loans were made which gave rise to the statute lien hereinafter mentioned.

After the 28th day of October, 1869, and prior to the 9th day of April, 1872, all of the stock-holders of the respondent corporation, the Birmingham Axle Company, by a mutual parol agreement and understanding among themselves, agreed to pay into the treasury, for the use and benefit of the corporation, a certain sum of money upon each share of the capital stock thereof; Mr. and Mrs. Colt entered into this agreement in relation to the stock standing in her name, including the fifty shares represented by the certificate held by the petitioner. All of the stockholders, except Mrs. Colt, executed their agreement, by paying the money due thereon from them respectively to the treasurer of the company.

On the 9th day of April, 1872, upon the joint request of Mrs. Colt and her husband, the corporation credited her with the payment of the sum due from her by reason of her agreement with the other stockholders, thus executed on their part, both then representing that she held the certificate for the stock and that they would transfer the same to the corporation to hold until she should repay the loan thus made to her.

Practically, the transaction was a loan of money by the corporation to her at her request to enable her to perform an agreement which she had made with her co-stockholders, presumably beneficial to her and to them, which she desired to execute, to which the corporation was not a party, for which it was not responsible and which was not illegal.

Therefore we see no occasion for discussing any question as to the power of the corporation to compel her to make this contribution to its treasury, if she had refused to do so.

Also, upon the 9th day of April, 1872, upon the joint request of Mrs. Colt and her husband, the corporation loaned to her for her private use an additional sum of more than $800, upon their like joint representation and agreement concerning the certificate of stock.

It is true, the Birmingham Axle Company was organized as a manufacturing corporation, and so far as the case shows, carried on that kind of business. The solitary instance of earning interest by a temporary loan of its funds to one of its stockholders upon the security of its own stock, which is brought to our notice, does not, in our view, so violate the law of its being, and is not so clearly against public policy, as to justify a court of equity in placing the transaction outside of its protection and in refusing to aid the corporation in obtaining repayment of the money, especially when the representatives of the debtor do not ask for any such action on the part of the court.

The statute provides that every joint stock corporation shall at all times have a lien upon all the stock or property of its members invested therein, for all debts due from them to such corporation.

When the respondent corporation made these loans to Mrs. Colt, the fifty shares of stock in question stood in her name upon its books, and it had received no notice that any other person had or claimed to have any interest therein. By operation of the statute a lien in its favor came into existence simultaneously with her indebtedness to it; and we do not regard its failure to insist upon her presentation of the certificate at that time such neglect as would prevent the inception of that lien.

In contemplation of law, the statute was known to the petitioner when he accepted the certificate ; it was, to him, as if it had been embodied therein ; it was in the nature of a qualification or restriction of his equitable interest; it was notice to him that if, after a reasonable time had elapsed, he refrained from giving any notice of his interest in the stock to the corporation, a statute lien might come into existence at any moment.

Under these circumstances the petitioner was called to the exercise of some diligence, to the performance of some act to perfect and protect his rights. His silence, two and a half years in duration, is neglect of such kind and degree as must place his interest in the stock in question second to the statute lien of the respondent corporation.

We advise the Court of Common Pleas that the Birmingham Axle Company has the first lien upon said stock for the repayment of $1,275, principal, with interest from the 9th day of April, 1872.

In this opinion the other judges concurred.