Joseph H. Gunster, Assignee in Trust for the Benefit of the Creditors of The Scranton City Bank, Appellant, v. The Scranton Illuminating, Heat and Power Company.

*Banks and banking—Checks—Signature of depositor.*

The signature of the depositor is the essential feature of a check, and a bank is not bound to pay any attention to the hand writing of the other parts, unless something is shown to excite suspicion.

*Principal and agent—Notice—Fraud.*

An exception to the general rule that notice to the agent is notice to the principal arises in case of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy, as where the agent acts for himself in his own interest and adversely to that of the principal.

Where an agent representing two principals concocts a scheme to defraud

one of them, it will be presumed that he did not disclose to the principal ▪ he intended to cheat, the means by which he intended to effect his purpose.

An independent fraud committed by an agent on his own account is beyond the scope of his employment, and bears analogy to a tort wilfully committed by a servant for his own purposes and not as a means of performing the business entrusted to him by his master.

*Banks and banking—Principal and agent—Fraud—Notice—Corporation.*

The treasurer of a manufacturing corporation, who was also vice president of a bank in general charge of the bank's affairs, made two promissory notes, signing them with the name of the corporation followed by his own name, as treasurer. The two notes were discounted by the bank and the corporation was given credit for the proceeds. On the same day the treasurer drew a check " to the order of Dft. N. Y.," signing it with the name of the corporation and his own name as treasurer. The amount of the check was charged to the corporation upon the books of the bank. On the same day in payment of the check the treasurer of the corporation drew two drafts upon New York to his own order, signing them with his own name as " vice president " of the bank. He received payment of the drafts in currency, and used the proceeds for his own private purposes. Subsequently the bank sued the corporation on the promissory notes. *Held,* that as the notes were made by the treasurer of the corporation as such, and as the check was drawn for the proceeds by the treasurer as such, and as both acts were within the treasurer's authority, the corporation was liable for the loss, and the bank was entitled to recover upon the notes.

Argued Feb. 26, 1897. Appeal, No. 64, Jan. T., 1897, by plaintiff, from order of C. P. Lackawanna Co., Nov. T., 1890, No. 423, dismissing exceptions to referee's report. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit upon two promissory notes.

Exceptions to referee's report.

The case was referred to W. W. Lathrope, Esq., as referee, who found the facts to be as follows :

1. The Scranton City Bank was a corporation organized under the laws of Pennsylvania.

2. On the 13th day of May, 1889, and for some time prior thereto, George A. Jessup was vice president of the said bank and had the principal management of its affairs. Among other things he attended to the drawing of drafts.

3. Prior to the 12th day of March, 1889, and from that time until after the 13th day of May, 1889, the said George A. Jessup was also treasurer of the said defendant company.

4. On the 12th day of March, 1889, the defendant company

made its promissory note to the Scranton City Bank in the sum of $4,000. The following is a copy thereof :

" $4,000.                    " SCRANTON, Pa., March 12, 1889.

"Thirty days after date we promise to pay to the order of Scranton City Bank, four thousand dollars at the Scranton City Bank for value received, without defalcation. Along with the foregoing obligation have delivered to said bank forty shares of the capital stock of said company as collateral security for the payment of the same on the day it becomes due, which collateral we hereby authorize and empower the holder of this promissory note (provided the same be not paid at maturity) to sell and transfer at public or private sale without further reference or notice to us and to apply the proceeds in payment thereof, together with interest and charges incurred thereon; thereafter should any deficiency remain unpaid, we further promise and agree to pay the same to the holder hereof on demand.

" Scranton Illuminating, Heat & Power Co.,

" GEO. A. JESSUP, Tr."

5. On the 13th day of May, 1889, the defendant company made another promissory note to the Scranton City Bank in the sum of $5,000. The following is a copy thereof :

" $5,000.                    " SCRANTON, Pa., May 13, 1889.

" Thirty days after date we promise to pay to the order of Scranton City Bank, five thousand dollars at the Scranton City Bank for value received, without defalcation.

" Along with the foregoing obligation, we have delivered to said bank, bonds of said Company as collateral security for the payment of the same on the day it becomes due, which collateral we hereby authorize and empower the holder of this promissory note (provided the same be not paid at maturity) to sell and transfer at public or private sale, without further reference or notice to us, and to apply the proceeds in payment thereof, together with interest and charges incurred thereon; thereafter should any deficiency remain unpaid, we further promise and agree to pay the same to the holder hereof on demand.

" Scranton Illuminating, Heat & Power Co.,

" GEO. A. JESSUP, Tr."

6. The said Scranton City Bank, on the days of the respective dates of said promissory notes, discounted the same, and gave the defendant company credit for the proceeds.

7. In May, 1889, the defendant company kept its bank account at the said Scranton City Bank. The method usually employed by the defendant company to draw its money out of said bank, was as follows: The secretary and bookkeeper of the defendant, Mr. Fred C. Hand, wrote checks upon the blanks contained in blank check-book, and made memoranda of each check on the corresponding stub in said book. The checks were then presented by Mr. Hand to the said George A. Jessup, treasurer, for his signature.

But it appears that said Jessup, as treasurer of the defendant, drew at least seven checks upon said bank upon loose blanks not taken from said check book, and that in one of them, he was the payee. These checks were paid, and no objection was made to their payment, except in the case of the check mentioned in the next finding.

8. On the 13th day of May, 1889, the same day on which the said promissory note for $5,000 was made and discounted as aforesaid, the said George A. Jessup, as treasurer of the company defendant, drew a check upon a loose blank not taken from the check book of the defendant, for the sum of $6,000. The following is a copy thereof:

"SCRANTON, Pa., May 13, 1889.

## "SCRANTON CITY BANK

of Scranton.

"Pay to the order of Dft., N. Y. .......................
six thousand ................................... dollars
    (Signed).      "Scranton Illuminating, Heat & Power Co.,
"$6,000.                        GEO. A. JESSUP, Tr."

The amount of this check was charged to the defendant upon the books of the bank.

Upon the same day, the said Jessup, as vice president of the Scranton City Bank in payment of said check, drew two drafts on the Third National Bank of New York, one for $4,000, and one for $2,000, both payable to George A. Jessup. Copies of said two drafts are as follows:

"SCRANTON CITY BANK.       No. 11,550.
"SCRANTON, Pa. May 13, 1889.
"Pay to the order of
"George A. Jessup ............................. $4,000
"Four thousand ................................ dollars
"GEO. A. JESSUP,
"Vice President.
"To Third National Bank, New York.
"Endorsed, Geo. A. Jessup."

"SCRANTON CITY BANK.       No. 11,551.
"SCRANTON, Pa., May 13, 1889.
"Pay to the order of
"Geo. A. Jessup ................................. $2,000
"Two thousand ................................ dollars
"GEO. A. JESSUP,
"Vice President.
"To Third National Bank, New York.
"Endorsed, Geo. A. Jessup."

George A. Jessup went forthwith to New York and received payment of said drafts in currency, and used the proceeds for his own private purposes.

9. The said George A. Jessup drew said check and said drafts, not for the use and benefit of the defendant company, but for his own private use. The whole transaction was unauthorized, and was a fraud upon the defendant, committed by George A. Jessup.

10. As treasurer of the company defendant, the said Jessup had made other promissory notes, and had procured the same to be discounted by the said bank.

11. The said Scranton City Bank, having become insolvent on the 25th day of May, 1889, made an assignment for the benefit of its creditors to Joseph H. Gunster, the plaintiff, who took possession of its property and assets, including the two promissory notes aforesaid, on the 27th day of the same month.

12. No director, officer or employee of the defendant company had any knowledge of the drawing of said check for $6,000, until fully two weeks after the same had been drawn. This was after the Scranton City Bank had made the assignment

aforesaid and after its assets had passed into the hands of the assignee. Of course no objection had been made, prior to such knowledge, to the payment of said check.

13. The said George A. Jessup did not give the cashier, president, or any officer or director of the said bank, notice of any fact affecting the validity of said promissory notes, checks or drafts.

14. The Scranton City Bank never had notice from the defendant company as to the form in which checks were to be drawn by said company, nor was any objection made to the manner in which checks and notes were drawn by said Jessup as treasurer of the defendant, until after the assignment aforesaid, and then only to the said check for $6,000.

### CONCLUSIONS OF LAW.

1. The knowledge of George A. Jessup that he had no authority to draw the said check for $6,000, and that he was committing a fraud upon the defendant, must be imputed to the Scranton City Bank for the reason that in the payment of the check he, and no one else, acted for the bank.

2. The amount of said check was improperly charged to the defendant on the books of the bank. The accounts between the parties, with the exception of the notes in suit, having been adjusted without correcting such improper charge, such correction having been asked but refused, the defendant is entitled to have the same set off against the plaintiff's demand.

3. J. H. Gunster, the plaintiff in this case, being an assignee for the benefit of creditors, stands on no higher ground than the assignor, the Scranton City Bank.

4. The plaintiff is entitled to judgment for $120.79, with interest from April 8, 1895.

The court dismissed exceptions to the report of the referee.

*Error assigned* was in dismissing exceptions to report of referee.

*C. H. Welles* and *S. B. Price*, with them *E. Merrifield*, for appellant.—While the knowledge of an agent is ordinarily to be imputed to a principal, it would appear now to be well established that there is an exception to the construction or imputa-

tion of notice from the agent to the principal in case of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy, as where the communication of such a fact would necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in perpetrating: 1 Am. & Eng. Ency. of Law, 423; Allen v. South Boston R. R. Co., 150 Mass. 206; Santiago Innerarity v. Merchants' Nat. Bank, 139 Mass. 332; Wilson v. Bank, 7 Atl. Rep. 145; DeKay v. Hackensack Water Co., 38 N. J. Eq. 158; Davis Imp. Wrought Iron Wagon Wheel Co. v. Davis Wrought Iron Wagon Co., 20 Fed. Rep. 699; Corcoran v. Snow Cattle Co., 151 Mass. 74; First Nat. Bank of New Milford v. Town of New Milford, 36 Conn. 93.

*Everett Warren*, with him *Henry A. Knapp*, for appellee.— The bank was bound by the knowledge to Jessup: First Nat. Bank of New Milford v. Town of New Milford, 36 Conn. 93; Farmers' and Traders' Bank v. Kimball Milling Co., 33 Am. & Eng. Corp. Cases, 336; Atlantic Bank v. Merchants' Bank, 76 Mass. 552; First Nat. Bank of Monmouth v. Dunbar, 118 Ill. 625; Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268; Janin v. London & San Francisco Bank, 27 Am. St. Rep. 82; Webb v. Graniteville Mfg. Co., 32 Am. Rep. 479; First Nat. Bank of Bethlehem v. Peisert, 2 Penny. 277; Harrisburg Bank v. Tyler, 3 W. & S. 373; Steckel v. First Nat. Bank of Allentown, 93 Pa. 376; Zeigler v. First Nat. Bank of Allentown, 93 Pa. 393; Resh v. First Nat. Bank of Allentown, 93 Pa. 397; Erie Boot & Shoe Co. v. Eichenlaub, 127 Pa. 164; Holden v. New York & Erie Bank, 72 N. Y. 286; North River Bank v. Aymar, 3 Hill, 262; Lyne v. Bank of Kentucky, 5 J. J. Marsh. 545; Smith v. Board of Water Commrs., 38 Conn. 208; Louisiana State Bank v. Senecal, 13 La. 525; Porter v. Bank of Rutland, 19 Vt. 410.

The directors of a banking corporation are chargeable with notice of such matters relating to the ordinary business of the bank as are known to the cashier: Tiffany v. Boatman's Inst., 18 Wall. 389; New Hope & Delaware Bridge Co. v. Phœnix Bank, 3 N. Y. 156; New England Car-Spring Co. v. Union India Rubber Co., 4 Blatch. 1; Pittsburg, etc., R. R. v. Ruby, 38 Ind. 294; Factors', etc., Ins. Co. v. Marine Dry Dock, etc., Co.,

31 La. Ann. 149 ; Gale v. Lewis, 9 Q. B. 730 ; Ex parte Harrison, 3 Mont. & A. 506 ; Ex parte Waithmam, 4 Deac. & Ch. 412 ; Union Bank v. Campbell, 4 Humph. 394 ; Clerks' Savings Bank v. Thomas, 2 Mo. App. 367 ; Jones v. Planters' Bank, 9 Heisk. 455 ; Bank of the United States v. Davis, 2 Hill, 451 ; Bank of America v. McNeil, 10 Bush. 54 ; Fall River Union Bank v. Sturtevant, 12 Cush. 372 ; Mechanics' Bank v. Schaumburg, 38 Mo. 228, 239 ; Louisiana State Bank v. Senecal, 13 La. 525, 527 ; Bank of St. Marys v. Mumford, 6 Ga. 44 ; Branch Bank v. Steele, 10 Ala. 915 ; Trenton Banking Co. v. Woodruff, 2 N. J. Eq. 117 ; Gould v. Cayuga County National Bank, 56 How. Pr. 505 ; Van Leuvan v. First National Bank, 6 Lans. 373 ; Reynolds v. Kenyon, 43 Barb. 585.

OPINION BY MR. JUSTICE MITCHELL, May 24, 1897 :

The referee found that there was nothing in the transaction so far out of the ordinary course of business as to make it unusual or such as should excite suspicion had the bank been acting through any of its officers except Jessup. Jessup was the treasurer of the defendant company, and the person who made its promissory notes, had them discounted for it, and drew its checks. These were usually, but not always, taken from its regular check book, and the body of them was usually in the hand writing of the secretary and book-keeper, though signed by Jessup. The signature of the depositor is the essential feature of a check, and a bank is not bound to pay any attention to the hand writing of the other parts, unless it shows something to excite suspicion. Nor was there anything to put the bank upon inquiry in the fact that the drafts were drawn to Jessup's own order. The check in payment of which the drafts were issued was drawn " to the order of Dft. N. Y." and there was nothing on the face of the transaction to indicate that it was not for the regular and legitimate business of the defendant company.

The referee finding that if Jessup had not been an officer of the bank there would have been no valid defense, thus reduced the case to a question of law whether Jessup's knowledge of his own fraud, at the time of its perpetration, carried with it knowledge or notice to the bank which would prevent its availing itself of a credit on the check. He took the affirmative view and the court below sustained him.

The authorities on this question are not uniform. In the case most relied upon by the learned referee, First Nat. Bank v. New Milford, 36 Conn. 93, the cashier of the bank was also treasurer of the town, and in the latter capacity had been accustomed to borrow money for the town upon notes made by him in its name. Having in his capacity as cashier embezzled the funds of the bank, he drew a note for $3,000, as treasurer of the town, entered it upon the books of the bank as if regularly discounted, and thus covered his embezzlement. In a suit on the note it was held that the bank could not recover. The decision is put upon two grounds, first, that the treasurer did not intend to pledge the credit of the town, but that "he drew the note, entered it in the books and caused it to be filed by the clerk, as a false representation and cover, precisely as he made other false representations and false entries, intending to restore the money and take out the note, and not intending to onerate the town. If that is so, there was no meeting of minds and no purchase of the note or contract of loan which will sustain this action." This was apparently the view of the majority of the court, but the opinion then goes on to add as a second reason that even if there was a contract of loan "it was made by Conklin as agent of the town with Conklin as agent of the bank. . . . He as agent of the bank had full knowledge therefore of the fraud; and now the bank if they ratify his contract and confirm his agency, must accept his knowledge and be bound by it, precisely as if the loan had been made and the knowledge had by the board of directors." The first ground thus set forth does not appear to have been adopted in any other case, but the second has very respectable authorities in its favor, among which may be cited First Nat. Bank of Monmouth v. Dunbar, 118 Ill. 625; Farmers' and Traders' Bank v. Kimball Milling Co., 33 Am. & Eng. Corp. Cases, 336; and similar in principle, Bank of U. S. v. Davis, 2 Hill (N. Y.), 451; Holden v. N. Y. & Erie Bank, 72 N. Y. 286; Webb v. Graniteville Manufacturing Co., 11 S. C. 396 (32 Am. Rep. 479).

On the other hand the principle has been distinctly repudiated by several courts of equal authority, and in the latest text book it is laid down without qualification that an exception to the general rule that notice to the agent is notice to the principal, "arises in case of such conduct by the agent as raises a

clear presumption that he would not communicate the fact in controversy, as where the agent acts for himself in his own interest and adversely to that of the principal: " 1 Am. & Eng. Ency of Law, 2d ed. 1145, and cases there cited.

In First Nat. Bank v. Christopher, 40 N. J. Law, 435, it was held after a review of the cases, that a director offering a note of which he is the owner to the bank of which he is a director, for discount, is to be regarded as a stranger, and the bank is not chargeable with the director's knowledge of fraud or want of consideration for the note. And in DeKay v. Hackensack Water Co., 38 N. J. Eq. 158, it was held that where the same person is an officer of two corporations, and he transfers securities issued by one to the other, with knowledge that they are not valid except in the hands of an innocent holder for value, his knowledge is not to be attributed to the transferee, Van Fleet, V. C. saying, " I understand the law to be that where an agent representing two principals concocts a scheme to defraud one of them for the benefit of the other, it will be presumed that he did not disclose to the principal he intended to cheat, the means by which he intended to effect his purpose."

In Innerarity v. Merchants' Nat. Bank, 139 Mass. 332, the exception was held to be well established that notice to the agent would not be deemed notice to the principal where the communication of the facts would necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in, and the distinction sometimes made upon the actual presence of the agent, as e. g. a bank director at the meeting where the transaction was concluded was said not to be of importance. The same view was followed in Allen v. So. Boston R. R. Co., 150 Mass. 200, and Corcoran v. Snow Cattle Co., 151 Mass. 74. See also, to the same effect, Barnes v. Trenton Gas Light Co., 27 N. J. Eq. 33 ; Winchester v. Balt. & Sus. R. R. Co., 4 Md. 231 ; First Nat. Bank v. Gifford, 47 Iowa, 575 ; Frenkel v. Hudson, 82 Ala. 158 ; Third Nat. Bank v. Harrison, 10 Fed. Rep. 243, 252 ; Davis Wheel Co. v. Davis Wagon Co., 20 Fed. Rep. 699 ; Thompson-Houston Co. v. Capitol Co., 65 Fed. Rep. 341. And in Platt v. Birmingham Axle Co., 41 Conn. 255, it was held that the knowledge of the secretary of a prior assignment of stock, standing in his wife's name, could not be imputed to the corporation, to defeat the corporation's lien for subsequent advances to

the wife upon the same stock, and the decision does not seem to have been thought in conflict with Bank v. New Milford, supra, as no comment or reference was made to that case.

An instructive case is Atlantic Mills v. Indian Orchard Mills, 147 Mass. 273. The same person was treasurer of two corporations, and fraudulently drew checks upon each in favor of the other when needed to balance his accounts and make his cash appear correct on examination. There had been also bona fide loans from each to the other, made in the same way. The court held that the account between them should be stated by charging each with the amount wrongfully transferred to it from the other, so that each should lose the exact amount taken from it by its treasurer acting in his capacity as such. This case was regarded by the learned referee in the court below as belonging to the class which imputes notice to the principal from knowledge of the agent, and the judgment could have been reached on that view. But the decision is put explicitly on the ground that " a party, even though innocent, cannot avail himself of an advantage obtained by the fraud of another unless there is some consideration moving from himself," referring to authorities as early as Lord MANSFIELD, and citing among others, Loring v. Brodie, 134 Mass. 453, 468. It is to be noted that this case, though leading to a different judgment, was not regarded in the subsequent decisions in 139, 150 and 151 Mass. cited supra, as conflicting with them, and that the principle of it would result in the same judgment, though for a different reason, as that in Bank v. New Milford, 36 Conn. 93, supra, and reconcile that case not only with the later case in the same court, Platt v. Birmingham Axle Co., 41 Conn. 255, supra, but with the cases in the class we are now considering. And the same principle would sustain First Nat. Bank v. Dunbar, 118 Ill. 625, supra, and probably other cases in the class imputing notice to the principal from knowledge by the agent.

We are of opinion that the second class of cases have not only the preponderance of authority but of sounder reason. The rule that knowledge or notice on the part of the agent is to be treated as notice to the principal is founded on the duty of the agent to communicate all material information to his principal, and the presumption that he has done so. But legal presumptions ought to be logical inferences from the natural

and usual conduct of men under the circumstances. But no agent who is acting in his own antagonistic interest or who is about to commit a fraud by which his principal will be affected does in fact inform the latter, and any conclusion drawn from a presumption that he has done so is contrary to all experience of human nature. If it be urged, as in some cases, that the principal having put the agent in his place should, as a matter of public policy, be held answerable for all the latter does, a sound answer is suggested by the court in Allen v. So. Boston R. R., 150 Mass. 200, 206, that an independent fraud committed by an agent on his own account is beyond the scope of his employment, and bears analogy to a tort wilfully committed by a servant for his own purposes, and not as a means of performing the business entrusted to him by his master.

We have not found or been referred to any express authorities in our own state. The point was touched upon in Millward-Cliff Cracker Co.'s Est., 161 Pa. 157, 167, and some observations of the learned auditor in that case seemed to be based on Bank v. New Milford, 36 Conn. 93, and the line of decisions following it. But the facts show that the bank was endeavoring to retain an advantage and assert a claim founded on a fraud in which its own officer had participated, and the case therefore comes plainly within the rule adopted in Atlantic Mills v. Indian Orchard Mills, 147 Mass., 273, supra, which we think entirely sound. In Wilson v. Second Nat. Bank, 7 Atl. Rep. 145, it was said per curiam, " the knowledge of Willcock as treasurer of the tool company cannot be imputed to the bank of which he was cashier, unless he revealed that knowledge to some one or more of its officers." The decision does not rest directly on that ground, but the expression shows that the views of the court were in harmony with those we now express. Even, therefore, if the present case be made to turn on the question of knowledge it was erroneously decided.

But we do not regard knowledge as the pivotal point of the case. Upon that point both parties would stand equal. Both might by mere inference be charged with knowledge, as the fraud was committed by an agent with authority to act for both, but in fact neither had or in the nature of things could have any knowledge at all, and neither was under any obligation to presume that its agent would be guilty of fraud. The real

question is, in what capacity did Jessup commit the fraud? And it is clear that it was as treasurer of the appellee. It was as treasurer he presented the notes for discount, and as treasurer he drew the checks for the proceeds. Both acts were within his authority as treasurer and would have been lawful if they had been honest, but he drew the money on drafts which were the property of the company, and when he embezzled the money it was the money of the company. The bank had no part in his act, and gained nothing by it. The fraud had its inception and its consummation in acts done in his capacity of treasurer of the defendant company, and it should bear the loss.

Judgment reversed, and record remitted with directions to enter judgment for the plaintiff, for the full amount of his claim.