\ DUTTON *against* THE CONNECTICUT BANK.

*A*, being in failing circumstances, on the 31st of *March*, made a general assign-
ment of his property, real and personal, to *B*, in trust for his creditors, under the
statute of 1828; and the deed of assignment was, on the same day, lodged for
record in the office of the court of probate. *B* accepted the trust, and invento-
ried the estate assigned, including eight shares of the stock of the *Hartford
Bank*. On the 1st of *April*, *C*, a creditor of *A*, without any actual knowledge of
the assignment, attached such shares, then standing on the books of the bank,
in *A's* name; and afterwards, had them sold and applied in satisfaction of the
execution obtained in the suit against *A*. At the time of the attachment,
there was in force a by-law of the *Hartford Bank*, previously made in con-
formity to its charter, requiring all transfers of its stock to be made in a book,
kept by the bank, for that purpose, in a prescribed form. On a bill in chan-
cery, brought by *B* against *C*, for the avails of the stock so attached and
sold, it was held, 1. that the assignment by *A*, and the record of it in the
probate office, did not transfer the legal title of *A* in the stock to *B;* 2. that
*C*, having no actual knowledge of the assignment, at the time of his attach-
ment, *B* acquired no equitable title in such stock; 3. that as the bill sought
only the recovery of a sum of money, the avails of the stock sold, there was
adequate remedy at law, and consequently, the bill, on that ground also, must
be dismissed.

THIS was a bill in chancery to obtain the avails of eight
shares of the stock of the *Hartford Bank*.

On the 31st of *March*, 1837, *Joseph Wood*, Esq., then of
*Bridgeport*, in this state, being in failing circumstances, exe-
cuted and delivered to the plaintiff a deed of assignment,
under seal, of all his estate, real and personal, within this
state, except money, and such property as is by law exempt
from being taken on execution, in trust for the benefit of his
creditors, pursuant to the provisions of the statute of 1828,
regarding fraudulent conveyances. This assignment was
delivered into the office of the court of probate, at 2 o'clock
in the afternoon of the same day; and the judge of that
court then received it, and made the indorsement thereon,
required by law. On the 1st of *April*, 1837, at 7 o'clock
in the afternoon, notice of such assignment was given to the
plaintiff, who then resided at *Newtown*, distant eighteen miles
from *Bridgeport*. The plaintiff thereupon proceeded to
*Bridgeport*, and, at about 10 o'clock in the evening of the
same day, accepted the trust, and gave bond for the faithful
performance thereof, according to law.

*Fairfield,*
*June, 1840.*

Dutton
*v.*
The Connecticut Bank.

At the time of this assignment, *Wood* owned eight shares of the capital stock of the *Hartford Bank ;* and after making the assignment, and the acceptance thereof by the plaintiff, he exhibited to the cashier of that bank, a power of attorney authorizing him to transfer said eight shares of stock to the plaintiff. The cashier, however, refused to make such transfer, on the ground, that the stock had been attached, by the present defendants.

Before, and at the time of the assignment, *Wood* was indebted to the defendants, in a sum exceeding 800 dollars; and the defendants, on the 29th of *March*, 1837, for the purpose of securing such debt, procured a lawful writ of attachment against him, and, on the 1st of *April*, at 10 o'clock in the forenoon, had it duly served, by attaching said eight shares of stock. In *August*, 1838, the defendants recovered judgment against him, for the sum of 892 dollars, 57 cents, damages, and costs of suit; and within sixty days after such judgment, had an execution issued thereon, levied on said eight shares of stock, which were duly sold, and the proceeds applied in satisfaction of the execution.

These eight shares of stock had been inventoried, by the plaintiff, as part of the estate of *Wood*, under the assignment; and the debts allowed by the commissioners on the estate, exceeded the value of the estate embraced in the inventory.

At the time of the assignment and attachment, (as well as before and since,) the following by-law of the *Hartford Bank* was in force : " At a meeting of the stockholders of the *Hartford Bank,* on the 8th day of *June,* 1820 : Be it enacted, by the stockholders of the *Hartford Bank,* that hereafter the stock of this bank shall be transferred in the manner following, *viz.* the stockholder shall subscribe an assignment or transfer of the shares of the stock to be by him transferred, in a book to be kept by the bank for that purpose, of the following tenor, *viz.*

                        ' *Hartford Bank,*      18

   **I,**           do hereby assign and transfer over to
of            shares of the stock of the said bank, *per* certificate No.     surrendered.         Shares.'
and shall, at the same time, deliver to the cashier of said bank such certificate, to be by him cancelled and kept on file ; and thereupon, a certificate or certificates, shall issue for the

shares so transferred, to the person to whom such transfer shall have been made; and for the residue of the shares, if any, contained in the certificate surrendered as aforesaid, a certificate or certificates shall issue to the stockholder, who hath made the assignment as aforesaid." Such by-law the *Hartford Bank* had authority, by its charter, to make.

The only evidence exhibited by the plaintiff, to prove that the defendants, before, and at the time of, the attachment, *knew* that the assignment had been made, was the testimony of *Mark Moore* and *John Barstow,* who then resided in *Bridgeport.* They testified, that on the evening of the 31st of *March,* and on the 1st of *April,* 1837, it was commonly known among men of business in *Bridgeport,* where the *Connecticut Bank* is located, and transacts its business, that *Wood* had assigned his property in trust for the benefit of his creditors. On the part of the defendants, *Charles Foote,* a credible witness, testified, that he was cashier of the *Connecticut Bank,* at the time of said assignment and attachment; that he had no recollection that he ever heard of the assignment, until after the attachment; that he was generally present at all the meetings of the directors, and had no recollection he ever heard the assignment mentioned, by any of them, or in their presence, until after the attachment; and that he had no knowledge that any of the directors knew of the assignment, until after the attachment.

The testimony of the plaintiff's witnesses was objected to, by the defendants, as inadmissible. The court, without deciding this point, reserved the case, embracing the facts and evidence above stated, for the advice of this court on these questions: 1. Is the testimony objected to, admissible; and if admissible, what effect, under the circumstances, ought to be given to it? 2. What decree ought to be made in the case?

*Bissell* and *Dutton,* for the plaintiff, contended, 1. That the assignment was sufficient to convey the right to the shares. It was all that could be lodged with the court of probate. If insufficient, the statute could not be complied with. *The Richmondville Manufacturing Company* v. *Prall* & al., 9 *Conn. Rep.* 487.

2. That the assignment took effect from the delivery to the

judge of probate.   *Halluck* v. *Bush,* 2 *Root* 26.   2 *Stark.
Ev.* 477. &, seq.

3. That it was, at least, evidence of an agreement to trans-
fer the shares ; and this, in equity, bound all who had notice,
actual or constructive.   *Peters* v. *Goodrich,* 3 *Conn. Rep.*
146.   *Watson* v. *Wells,* 5 *Conn. Rep.* 568.   *Stoughton* v.
*Pasco, Id.* 442.   *Booth* v. *Barnum,* 9 *Conn. Rep.* 286.

4. That an assignee under the statute has all the rights of
a *bona fide* purchaser.   *Chamberlin* v. *Thompson,* 10 *Conn.
Rep.* 243.   *Swift* v. *Thompson,* 9 *Conn. Rep.* 63.

5. That attaching creditors stand on the same ground as
subsequent purchasers.   *Chamberlin* v. *Thompson,* 10 *Conn.
Rep.* 243.   *Priest* v. *Rice,* 1 *Pick.* 164.   *Farnsworth* v.
*Childs,* 4 *Mass. Rep.* 641.   *Davis* v. *Blunt,* 6 *Mass. Rep.*
487.   *Prescott* v. *Heard,* 10 *Mass. Rep.* 60.

6. That the evidence of notice was admissible and suffi-
cient.

*Booth* and *Loomis,* for the defendants, contended, 1. That
the defendants had the legal title ; and a court of chancery
would not deprive them of it, under the circumstances of this
case.   *Chamberlin* v. *Thompson,* 10 *Conn. Rep.* 243.
*Cushing* v. *Hurd,* 4 *Pick.* 256.   *Northrop* v. *The Bridge-
port Turnpike Company,* 3 *Conn. Rep.* 552.   *The Marlbo-
rough Manufacturing Company* v. *Smith,* 2 *Conn. Rep.* 579.

2. That there was no notice.   In the first place, the evi-
dence offered by the plaintiff, was inadmissible.   Secondly,
if admitted, the balance of testimony was in favour of the
defendants.

3. That this bill was not sustainable, because the plaintiff,
if the legal title to the stock was vested in him, by the assign-
ment, had adequate remedy at law.   He seeks money only ;
which, if he has title, may be recovered in *assumpsit* for
money had and received.

WAITE, J.   The only question now submitted to our con-
sideration, is, whether the plaintiff is entitled to the relief
prayed for in the bill.

The defendants brought their suit against *Joseph Wood,* at-
tached eight shares of the capital stock of the *Hartford Bank,*
standing in his name upon the books of the bank, and having

obtained jugdment against him, caused those shares to be sold upon their execution. The plaintiff claims to recover the avails arising from that sale. He admits, that the stock was originally the property of *Wood*, but claims it by virtue of an assignment. This assignment was made, and lodged in the probate office for record, before the attachment ; but no transfer of the stock was made to the plaintiff upon the books of the bank ; and it is not now insisted, that the defendants had any *actual* notice of the assignment before the attachment.

The validity of the plaintiff's title must depend entirely upon the effect to be given to the record of the assignment in the probate office. The charter of the bank provides, that the stock " shall be assignable and transferable according to such rules as shall be instituted in that respect, by the same." The bank has established such rules according to the provisions of the charter.

Does the statute respecting assignments by insolvent debtors for the benefit of their creditors, make the record of such assignment in the probate office supersede the transfer upon the books of the bank, in conformity with the by-laws of the corporation ; or is it necessary to the perfection of the plaintiff's title, that such transfer should be made ? It cannot be claimed, that the mere execution and delivery of the assignment would transfer the legal title to the stock. If it can have any such effect, it must arise from the record of the assignment.

But in our opinion, no such effect was ever contemplated by the legislature. The object in requiring the assignment to be lodged in the probate office, was, to lay the foundation for the subsequent proceedings in the court of probate, and to give notice to the creditors of the insolvent debtor of the provision made for them.

He may assign for their benefit, not only his personal estate, but his lands. But in order to transfer the latter, he can only do it by a deed, accompanied by certain formalities. It must be witnessed by two witnesses, acknowledged before some magistrate, and recorded in the records of the town where the lands are situated. But the statute has given no directions respecting the execution of deeds of assignment by insolvent debtors. They must, however, be executed in such

*Fairfield,*
June, 1840.

Dutton
*v.*
The Connecticut Bank.

manner as to transfer the specific property attempted to be assigned, or be accompanied with other instruments sufficient for that purpose. Thus, if land is assigned, it must be executed and recorded in such manner as the law requires for the conveyance of land, or be connected with a deed duly executed and recorded, or the legal title to the real estate will not pass.

So, if the assignment embraces stock in a corporation, it must be executed in the manner required by law for the transfer of such stock, or be accompanied with some other instrument adapted to the conveyance of such stock, or the title will not pass. An attaching creditor is not bound to look beyond the books of a bank to ascertain whether his debtor has made any assignment of the stock standing in his name. The books of the corporation is the appropriate place to determine the ownership of the stock.

The stock, in the present case, at the time of the attachment, stood in the name of *Joseph Wood*, upon the books of the corporation. The legal title, therefore, remained in him. No legal assignment or transfer of the stock had been made, at the time of the attachment. The plaintiff furnishes no sufficient evidence that the defendants had *actual* knowledge of any intent on the part of *Wood* to transfer the stock to the plaintiff, at that time; and consequently, in our opinion, he has failed to shew either a legal or equitable title to the stock attached.

But again; it is not only a rule of equity, but a provision in our statutes, that a party shall not be permitted to sustain a bill in chancery where he has adequate remedy at law. Here, the plaintiff claims nothing but the recovery of a sum of money, the avails of the stock sold. Why not bring an action of *assumpsit* for money had and received? That form of action resembles a bill in equity, and will generally lie whenever the defendant has received money to which the plaintiff is in justice and equity entitled. Lord *Mansfield* says, that " where goods are taken in execution, which are not the property of the person against whom the execution is taken out; the owner may waive the trespass, and bring his action for the amount for which the goods were sold." *Lindon* v. *Hooper*, 1 *Cowp.* 419.

Were the plaintiff entitled to the avails of the stock, we see

no necessity of resorting to a court of chancery to recover them.

Our advice, therefore, is, that the bill be dismissed.

In this opinion the other Judges concurred, except SHERMAN, J., who gave no opinion, having been of counsel in the suit.

Bill dismissed.