CITY FIRE INSURANCE COMPANY *vs.* HANNAH L. OLMSTED,
ADMINISTRATRIX.

An executory contract for the transfer of stock as collateral security for a debt,
where the debtor has died insolvent, will not be enforced by a court of equity to
the injury of other creditors.

BILL in equity, brought to the superior court for New Haven
county, praying that certain insurance stock belonging to the
estate of Lucius D. Olmsted deceased, and which he had in
his life time contracted to transfer to the petitioners as secu-
rity for an indebtedness to them, might be sold and the pro-
ceeds applied on the debt, or that the respondent, his ad-
ministratrix, might be ordered to transfer the stock to the
petitioners, to be applied at its ascertained value to the debt.
The case was referred to a committee whose report embraced
the following facts.

The said Lucius D. Olmsted died on the 13th day of March,
1862, at Chicago, in the state of Illinois, leaving his estate
deeply insolvent, and his estate was in course of settlement
there as an insolvent estate.

On the 30th day of August, 1861, he executed with the
petitioners the following agreement, which was then delivered
to and has ever since been held by the petitioners :—

" Whereas I, Lucius D. Olmsted, of the city of Chicago, in
the state of Illinois, am indebted, as endorser and guarantor,
upon certain bonds, notes or obligations, as hereinafter named,
to the City Fire Insurance Company of New Haven, Connec-
ticut, as follows, to wit :—[describing them.]  Now there-
fore, for the better securing of the above named indebtedness,
amounting in all to the sum of fifty-eight hundred dollars, I
hereby agree to transfer to the said City Fire Insurance Com-
pany my stock, amounting to forty shares, in said company at
or before the maturity of said above described notes ; and
also on or before the fifteenth day of September next, I agree
to pay to the said City Fire Insurance Company the sum of
eight hundred dollars on account of the above indebtedness ;

City Fire Insurance Company *v.* Olmsted.

and also on the fifteenth day of March, 1862, six hundred dollars ; and on the fifteenth day of September, 1862, also six hundred dollars ;—all to be applied on the indebtedness above described, which indebtedness is to draw interest at the rate of ten per cent per annum. In consideration of the above payments, and the collateral security above named, it is agreed by the City Fire Insurance Company aforesaid, that the said company will not call on the said Olmsted for the full amount of the above described indebtedness, for the term of one year from the date of the first payment, namely, one year from the fifteenth day of September, 1861. Any non-fulfillment on the part of said Olmsted of this agreement renders this contract void on the part of the City Fire Insurance Company aforesaid. New Haven, Connecticut, August 30th, 1861. (Signed,) Lucius D. Olmsted. Wells Southworth, Pres't City Fire Ins. Co.''

At the date of this contract Olmsted was the owner of forty shares of the stock of the said City Fire Insurance Company, but previously, on the 28th of June, 1861, he had transferred twenty shares to Hervey Sanford, president of the New Haven Bank, as collateral security for a debt to the bank, for which shares a certificate in the usual form had been issued to said Sanford as president, and was outstanding in his hands, the debt for which they had been pledged not having then been discharged. The remaining twenty shares still stood in the name of Olmsted on the books of the City Fire Insurance Company, for which he held a certificate in the usual form, issued to him in his own name. These forty shares were the only shares of stock in the company in which Olmsted had any interest on the 30th day of August, 1861. No portion of these forty shares was ever transferred to the petitioners. The only reason why they were not transferred at the time of the making of the contract, was that twenty of the shares were then pledged to said Sanford as above stated, and that Olmsted preferred to transfer the whole at the same time, which he promised to do as soon as the liability to the New Haven Bank should be discharged. On the 22d of July,

1862, and after the decease of Olmsted, the liability for which the twenty shares had been pledged to the bank was discharged, and thereupon said Sanford, as president of the bank, transferred them to Olmsted's estate and surrendered his certificate; and thereupon the City Fire Insurance Company issued a new certificate for said shares in the usual form, to the " estate of L. D. Olmsted; " which certificate was delivered by the company to Hannah L. Olmsted, the respondent, as administratrix on Olmsted's estate, who has ever since retained it. At the time of the delivery of the certificate she was notified by the president of the company of their lien on the stock and their intention to enforce the same. At the time of the decease of Olmsted his certificate for the other twenty shares was in his possession, and subsequently passed into the hands of the respondent as administratrix, who has ever since held the same. Olmsted at the time of his decease was a resident of Chicago and had estate there. Letters of administration on the estate were granted to the respondent at Chicago, and she has been required by the court to inventory and has in fact inventoried the forty shares of stock as part of the assets of the estate. The actual value of the shares is one hundred and twenty-five dollars per share. The petitioners never had and have not now any other security for any portion of the indebtedness of Olmsted to them, and the makers of the notes and bonds are insolvent.

Upon these facts the case was reserved for the advice of this court.

*Foster*, for the petitioners.

1. The contract set up in the bill of the petitioners is one which equity will enforce, although relating to personalty merely. 2 Swift Dig., 17; 2 Parsons on Cont., 510, 516, 554; *Clark* v. *Flint*, 22 Pick., 231. It has every requisite of a valid contract, a valuable consideration and certainty of terms, and every obligation on our part has been performed. Had Olmsted lived it would have been enforced against him. Had the stock been transferred to us our right to apply it would not be questioned. Equity will consider that done

which is agreed to be done.  The committee finds that the reason why the stock was not transferred was because twenty shares were hypothecated to the New Haven Bank.  But the stock was ours.  It could not be transferred save through our agency.  Had Olmsted or any party claiming under him attempted to take this stock, they could have taken it only subject to our lien.

2. We have no adequate remedy at law.  The estate is insolvent, and an enforcement of our securities, if at all possible, can only be done at great delay and expense.  *Clark* v. *Flint,* supra.

*H. B. Harrison,* for the respondent.

1. The petitioners have no lien upon the stock.  The contract looks to a pledge of the stock as distinguished from a mortgage.  A transfer of stock as collateral security is a pledge.  *Wilson* v. *Little,* 2 Comst., 443.  Delivery of possession is essential to a pledge of personal chattels.  Such delivery in the case of stock must be made by an actual transfer.  Until actual transfer there is no delivery and therefore no pledge.  In this case there was no transfer, hence no delivery, hence no pledge.  Willard's Eq., 455, *et seq.* ; 2 Hilliard on Mort., 517, *et seq.* ; 4 Kent Com., 138 ; Story on Bailm., §§ 286, 287, 290 *a,* 297, 299 ; 1 Parsons on Cont., 594 to 597, and notes.  Even if it had been possible to pledge the stock without actual transfer, the contract would not have operated as a pledge.  It did not purport and was not intended to be a pledge.  By it Olmsted did not undertake then to pledge the stock.  He simply promised that he would pledge it at a future time.  He never fulfilled his promise.  In other words the promised pledge was never made.  The petitioners never acquired their expected lien upon the stock, and do not now possess any lien upon it.

2. Specific performance of the contract can not be decreed against this respondent, who represents bona fide creditors, the estate being in fact largely insolvent.  Their right to participate in this fund as assets of the estate became vested absolutely by Olmsted's death.

HINMAN, C. J. We have no doubt of the general equity of the petitioners' case as against Lucius D. Olmsted, if he was still living, or as against his heirs now that he is dead ; but the main fact relied upon in the petition as the ground of equitable relief, as distinguished from the relief which all the creditors of his estate are entitled to, namely, the insolvency of his estate, and which is fully found by the court, must deprive the petitioners of the specific relief sought for in this bill. It can not be claimed that the petitioners have any lien upon this stock. The deceased was indebted to them, and for the better securing of that indebtednsss he agreed to transfer to them, on or before the maturity of certain notes, the subject of that indebtedness in part, the stock in question. But this was never done, and he subsequently died deeply insolvent, and the petitioners now seek the specific execution of this contract on the part of his administratrix, who of course represents all the other creditors of the estate.

This is the whole case. As the legal title to the stock was in Olmsted up to the time of his death, any creditor of his might have attached it ; *Dutton* v. *Connecticut Bank*, 13 Conn., 498 ; or if he had been forced into bankruptcy, or had assigned it for the benefit of his creditors, his assignee would have held it. *Swift* v. *Thompson*, 9 Conn., 63 ; *Shipman* v. *Ætna Insurance Company*, 29 id., 245. Indeed the last case is a direct authority in favor of the respondent on every point involved in this, unless some distinction favorable to the petitioners can be drawn from the circumstance that the assignee in that case represented the creditors of a living bankrupt, while in the case at bar the administratrix represents the creditors of an insolvent estate. But there is obviously no ground for any such distinction. Had this stock been attached before Olmsted's death the lien would have been dissolved for the benefit of all his creditors, though valid against the petitioners had he lived. On his death all the creditors stand upon the same footing, and equality is equity.

We advise the superior court to dismiss the petitioners' bill.

In this opinion the other judges concurred.