THE FIRST NATIONAL BANK OF DAVENPORT V. GIFFORD.

1. **Corporation**: ACT OF OFFICER: NOTICE. Where, by an agreement between the president and cashier of a bank, which was unknown to the other officers of the bank, certain stock of the corporation was purchased by the cashier with money borrowed from the bank for which he gave his note indorsed by the president, *held*, that the bank was not chargeable with notice of the agreement and not bound to hold the note for the protection of the president.

2. ——: ——: ——. The officers of a corporation cannot at the same time and with respect to the same transaction, in which both the corporation and they themselves individually are interested, act for themselves and the corporation, and if they assume so to act, their acts are not binding upon the corporation.

3. ——: TRANSFER OF STOCK. The transfer of stock by means of a transfer ticket and an entry of the transfer upon the books of the corporation, accompanied by a surrender of the certificate by the transferer and cancellation thereof, gives to the transferee as between himself and the corporation a complete title to the stock, although no certificate was issued to him in lieu of that which had been canceled.

4. ——. G., who was president of a bank, indorsed the note of P., the cashier, the proceeds of which were used in the purchase of stock, although no certificate of the stock was ever issued to P. in place of the certificate of the former owner which was surrendered and canceled; P. subsequently assigned the stock to S. as security for a loan and afterwards made an agreement in writing with W. to sell him the stock for a sum with which to pay S.; thereupon G. notified the officers of the bank of the circumstances of the purchase by P. and of his claim on the stock: *Held*, that the bank was bound to issue a certificate of the stock to W. and was not liable in damages to G. therefor.

*Appeal from Scott District Court.*

SATURDAY, DECEMBER 15.

ACTION on a promissory note executed by D. C. Porter and guaranteed by the defendant. The answer alleged that Porter purchased of one Ochs ten shares of plaintiff's stock, and that the note was given for money loaned by the plaintiff to pay therefor; that in consideration of defendant's indorsement of said note it was agreed between plaintiff, defendant and Porter that the latter should deliver the said stock to be

held as collateral security for the payment of said note as well as for the protection and security of defendant against liability upon his indorsement of said note, and that in pursuance of said agreement the certificate for said stock was delivered to plaintiff and the same accepted for the uses and purposes aforesaid; that plaintiff, with full notice and knowledge of the rights of defendant, permitted said stock to be transferred on its books to one Whitaker, thereby wholly destroying defendant's security. By way of counter-claim the defendant sought to recover the value of said stock. There was a trial by the court, by whom a finding of facts was made as follows:

I.   That the plaintiff is, and was prior to 1870, an incorporated national bank, organized and existing under and by virtue of the laws of the United States of America, and doing business at the city of Davenport, in the county of Scott, and State of Iowa.

II.   That on November 3d, 1872, one D. C. Porter, for value received, executed and delivered to said plaintiff his promissory note, being as alleged and set out in the petition.

III.   That at the time of the making and delivery of said note said defendant, for the purpose of guarantying its payment, indorsed his name upon the back of the same, as alleged and set out in the petition.

IV.   That at the time of the making and delivery of said note said D. C. Porter was the cashier and said Ira M. Gifford the president of the plaintiff.

V.   That said note was duly presented for payment at maturity and payment refused, of which defendant had due notice.

VI.   That the expense of said demand and protest paid by plaintiff at the time was two dollars and twenty-five cents.

VII.   That no part of said note or protest has been paid.

VIII.   That the original transaction out of which said note arose took place in 1871, and while said Porter was cashier and said Gifford was president of the plaintiff. That at said time a similar note was given by said Porter to said plaintiff and renewed from time to time until the note in suit was given, said parties continuing to be said officers during this time, the

interest being paid from time to time to the maturity of the note in suit.

IX. That said original note was given for money borrowed and which was used by Porter in the purchase of ten shares of the capital stock of the plaintiff of one Lipman Ochs and which was and still is worth the sum of two thousand dollars, said stock being assigned to said Porter by a transfer ticket and an entry thereof made in the transfer books of the plaintiff and the certificate of stock held by said Ochs delivered to him and the stock credited to said Porter on plaintiff's ledger.

X. That after the purchase by said Porter of said stock, as stated in paragraph nine hereof, he voted upon said stock at all stockholders' meetings. It was treated as his. He drew the dividends thereon, and it formed the basis upon which he was elected a director of plaintiff, all with the knowledge and consent of the defendant, but no certificate of stock was ever issued to him.

XI. That at the time said Gifford indorsed the original note, and from time to time, as the same was renewed, including the time the note in suit was made, it was the understanding and agreement between said Porter and said Gifford that said ten shares of stock was to stand as security to Gifford for his indorsement or guaranty, and that it should, as to Gifford, take care of and provide for the payment of said note.

XII. That the plaintiff and none of its officers, except Porter and Gifford, had officially any knowledge or notice of the agreement between Porter and Gifford, mentioned in paragraph eleven hereof, until after January 15th, 1873.

XIII. That some time before January 15th, 1873, the said Porter borrowed of one S. F. Smith a certain sum of money, to-wit: twelve hundred dollars, and put up with him as collateral security therefor the said stock, assigning it to him by a transfer ticket and an entry upon the transfer books of plaintiff, and delivered to him the transfer ticket received by him from Ochs, and on January 15th, 1873, the said Porter borrowed twelve hundred dollars of one Chas. Whitaker to pay Smith, and for other purposes, and at the same time entered into an agreement in writing with said Whitaker, to sell to

said Whitaker said ten shares of stock for sixteen hundred dollars, if he should so elect in a given number of days, in which case he was to pay said Porter four hundred dollars in addition to the amount borrowed; and if said Whitaker did not so elect the twelve hundred dollars was to be and remain a loan, and the stock collateral to it, and by said contract said Smith was to and did hold said stock as before, as trustee for the parties, to execute and see that the agreement was carried out.

XIV. That after the 15th day of January, 1873, and before the 21st day of January, 1873, said defendant informed and told said S. F. Smith, said Chas. Whitaker and Hiram Price, the president of the plaintiff, of the agreement between himself and said Porter in relation to said stock, as set out in paragraph eleven hereof, and that he should insist upon his rights in the premises.

XV. That on the 21st day of January, 1873, the defendant duly served on the plaintiff a notice in writing, being exhibit attached to the evidence filed in this cause.

XVI. That on February 4th, 1873, the said Charles Whitaker, in pursuance of the agreement mentioned in paragraph thirteen hereof, paid to the said Porter four hundred dollars, balance of the purchase price of said stock.

XVII. That on February 17th, 1873, there was issued and delivered to said S. F. Smith, by plaintiff, a certificate for said ten shares of stock, in pursuance of the request of said Whitaker and said Porter and their said contract, and the following resolution passed by the board of directors of plaintiff, on February 13th, 1873, it being for the purpose of making a transfer to Whitaker, as purchaser, to-wit:

"Whereas, Ira M. Gifford, the former president of this bank, has filed with the present officers of the bank a protest against the transfer, by D. C. Porter, of ten shares of the stock of this bank in the name of said D. C. Porter; and whereas, it appears from the books and proceedings of said bank that the said Porter, with the knowledge and consent of the said Gifford, has voted said stock at all elections of stockholders, and been by the said stockholders, including the said Gifford,

elected a director of said bank when it was well known by all the stockholders, including the said Gifford, that said Porter could not have been legally elected a director unless he had been the real owner of said ten shares of stock; and whereas, the said Porter has always, with the knowledge and consent of said Gifford, drawn all the dividends of the said ten shares of stock; now, therefore, be it Resolved, in view of the foregoing facts, that the president be and is hereby directed to transfer the said ten shares of stock to such person or persons as he, said Porter, may direct."

XVIII. That thereafter the said certificate issued to said Smith was surrendered and canceled, and said Smith transferred said stock on the bank's books to said Whitaker, and a new certificate for said stock was issued to said Charles Whitaker, who now holds the same.

XIX. That the articles of association and by-laws of the plaintiff, are, and have been since its organization, as follows:

(Such thereof as are pertinent to this case are set forth in the evidence, on pages 10 and 11.)

XX. That the instruments referred to in paragraphs nine and thirteen hereof, and described therein as transfer tickets, were in form as follows:

"10 Shares. For value received, I hereby assign and transfer to D. C. Porter all my right, title and interest in ten (10) shares of the capital stock of the First National Bank of Davenport, standing in my name on the books of said bank.

"L. L. Oous."
"Witness:"

The one given by Porter to Smith being in the same form, except the names of the parties.

XXI. That the said plaintiff kept a transfer book upon which transfers of its stock were made, and which contained printed forms of such transfers in the same form as the instrument above copied, with a stub attached to each said transfer, which, when filled up in accordance with the transfer, showed the particulars thereof, and from which the transfers were posted in the stock ledger. It was customary, in said plain-

tiff's bank, on such transfers being made, but was not always done, to permit the instrument of transfer to be cut out from the transfer book, and be delivered to and kept by the transferee, the stub thereof being left in the book, and such transfer was then called a transfer ticket; and such was the case in respect to the transfer tickets referred to in paragraphs 9 and 13 hereof.

XXII.   That said defendant retired from the bank as president about the 10th of January, 1873, and was succeeded by Hiram Price, and was not in the bank when Porter made the transfer ticket to Smith.

XXIII.   That at the time Smith made the loan to Porter he took as security, in addition to the ten shares referred to, two shares of stock then held by Porter, and on which certificates had been issued, and which were worth four hundred dollars.

XXIV.   That the loan for which the note in suit was given as a renewal was passed upon and approved by the board of directors of plaintiff.

XXV.   That the money received by Porter from Smith on said stock was applied by Porter in payment of a deficit then owing by him to the plaintiff.

XXVI.   That about the day and immediately before the defendant notified Smith and Whitaker of his alleged rights in the ten shares of stock, he had negotiated a sale of the same to one Stephenson for two thousand dollars, and went to the bank of plaintiff to have it transferred, and the money applied on the note in suit, when Porter, who was then in the bank as an employe, informed him of the loan of twelve hundred dollars from Smith, and the circumstances of the loan.

As a conclusion of law, the court rendered a judgment against the defendant, and for the amount due on the note, and he appeals.

*Martin, Murphy & Lynch* and *C. C. Cole*, for appellant.

*Putnam & Rogers*, for appellee.

SEEVERS, J.—I.   It is assigned for error that the finding of facts is not sustained by the evidence.   Counsel in their argument, however, say that the "evidence is embodied in the abstract more for the purpose of giving a clearer understanding of the case, and presenting certain facts not found, than to dispute or question the facts as found by the court, as we concede the findings, aside from a few particulars, which we will notice in the argument, in the main correct."

So far as we can discover, it was not claimed in the court below that the finding of facts was not full and complete.   The abstract fails to disclose that the court below was requested to find any additional fact.   Nor have we been able to discover in the argument of counsel what fact or facts found by the court is not fully sustained by the evidence.   Under these circumstances the law of the case must be determined solely with reference to the facts found, and we cannot undertake to ascertain wherein the evidence does not sustain the finding when counsel have been unable or unwilling to undertake the task.   The assignment of error just referred to must, therefore, be deemed waived.

II.   That the defendant was a surety, entitled to his full rights as such, and that it was the duty of the plaintiff, if it possessed the requisite means, power and knowledge to protect him, seems to be conceded by counsel for the appellee.   We will first consider whether the plaintiff had notice or knowledge of the rights claimed by the defendant, or in other words did it have notice of the arrangement between defendant and Porter.   It is clear, under the finding of facts, that as between defendant and Porter the stock was to "stand as security to the defendant for his indorsement or guaranty" of the note, and it is equally clear that the plaintiff or its officers had no notice or knowledge of this arrangement except the defendant and Porter, who then were respectively president and cashier of the plaintiff.   Counsel for appellant insist the plaintiff "undertook and agreed at the time the defendant indorsed the note, that the stock should not be transferred, but should be held for defendant's protection," and many authorities are cited in support of this posi-

1. CORPORA-
TION: act of
officer: notice.

tion. But this position is in direct opposition to the finding of facts, and how can it be said that the plaintiff undertook and agreed the stock should not be transferred when it did not have notice or knowledge of the arrangement between the defendant and Porter, except as above stated.

III. Did the knowledge of the defendant and Porter constitute knowledge to the bank? The arrangement was a private one between defendant and Porter, in which the bank had no interest whatever except as a discounter of the note. The proposition is rather a strange one, if the defendant and Porter could act for themselves and the bank in and about the same transaction at the same time, and equally protect the interest of both; or that, while so acting, they could, by notice to each other, bind the bank hand and foot, without at least advising with or notifying any other officer of the institution. Besides this, Porter voted the stock at the stockholders' meetings, with the knowledge and consent of the defendant. The conduct of the latter was such as to induce the other officers of the bank to believe that Porter was the absolute and entire owner of the stock. Under the facts found we have no hesitation in holding that notice to the defendant and Porter, or rather their knowledge of the transaction, did not constitute notice to the bank. Such rule seems to be sustained by the decided weight of authority. *Washington Bk. v. Lewis*, 22 Pick., 24; *Farmers' & Cit. Bk. v. Payne*, 25 Conn., 444; *Farrel Foundry v. Dart*, 26 Conn., 376; *Seneca County Bank v. Neass.*, 5 Denio, 329; *Winchester v. B. & S. R. R. Co.*, 4 Md., 231; *Platt v. Birmingham Axle Co.*, 41 Conn., 255.

The only case in seeming conflict with the foregoing to which our attention has been called is *Scripture v. Francestown Soapstone Co.*, 50 N. H., 521, but even this case does not sustain the claim made by the defendant. In that case the party seeking to avail himself of notice to the officer was an outside party, in no way connected with the corporation; while here the defendant seeks to avail himself of his own knowledge, or, as it were, of notice to himself, and by this bind the corporation. Such doctrine we are unwilling to sanction.

IV. Had the plaintiff the means or power to protect the defendant? The by-law of the plaintiff referred to in the nineteenth finding provides "that certificates of stock shall be signed by the president and cashier, with the seal of the corporation attached,    *    *    and registered in a book kept for that purpose. Certificates of stock may be assigned by indorsement on the back, but no transfer of stock shall be valid except when made on the books of the bank, and upon the return of the certificate to be transferred."

*3.——: transfer of stock.*

The former owner of the stock, Mr. Ochs, delivered the certificate held by him to Porter, and the stock was assigned by the former to the latter by means of what is termed a transfer ticket, and an entry thereof was made in the transfer book of the bank. No certificate was ever issued to Porter, and the Ochs certificate was canceled, or at least the defendant does not claim that it was ever assigned to him.

It is useless to consider what would be the rights of the defendant if a certificate had been executed to Porter, and by him assigned to the defendant, and no transfer entered on the books of the bank, for no such state of facts is presented by the finding.

As between Porter and the corporation he was the undoubted owner of the stock. No certificate was required to perfect his title. It mattered not whether one ever was issued. He being such owner, and the bank not chargeable with notice of defendant's rights, Porter had the right to sell and transfer said stock, and the bank was bound to recognize his transferee as owner. Whatever title Porter had was obtained by Smith and Whitaker.

It seems to us that the transfer on the books of the bank was sufficient to make Porter's title full and complete. A stock certificate would be only additional evidence of his title, but it was by no means essential. The foregoing views are supported by the following authorities: *Agricultural Bank v. Burr*, 24 Me., 263; *Dutton v. Conn. Bank*, 13 Conn., 493; *N. Y. & N. H. R. R. Co. v. Schuyler*, 34 N. Y., 30; *Bank of Com-*

*merce's Appeal*, 73 Penn. St., 59; *Chouteau Spring Co. v. Harris*, 20 Mo., 383.

The authorities cited by counsel for appellant are not applicable because they have reference to cases where the certificate had been assigned and no transfer made on the books of the corporation, or where the certificate had been assigned to one and the transfer on the books to another, or rights had been acquired under the assignment of the certificate and the corporation refused to recognize the transferee as the holder.

The *Turnpike Co. v. Bedla*, 45 Ind., 1, is not in conflict with the views herein expressed.

V. It is said by counsel that "Whitaker had actual knowledge of defendant's rights before he paid a farthing in the way of purchase." In this counsel are mistaken as will appear by reference to findings 13 and 14.

Conceding that the bank was notified of defendant's rights and Whitaker also before the latter had paid but $1,200 of the purchase price of the stock, and also that the value of the stock was $2,000, still these matters would not render the plaintiff liable to the defendant for the difference between $1,200 and $2,000; for the reason, if no other, that the plaintiff could not have prevented the transfer, and consequently could not be held liable for that which it had no power to prevent.

AFFIRMED.

### ON REHEARING.

DAY, CH. J.—Upon petition of appellant, filed within the time by rule prescribed, a rehearing was granted upon the last point determined in the foregoing opinion. As directed by the court, the case has been re-argued upon the questions involved in this branch of the opinion, and has again been submitted for final determination. The foregoing opinion, we think, correctly holds that the assignment of the ten shares of Ochs' capital stock to Porter, by means of a transfer ticket and an entry thereof in the transfer books of plaintiff, the delivery of the certificate of stock held by Ochs, and the crediting of the stock to Porter on the plain-

4.——: transfer of stock.

tiff's ledger, as set forth in the 9th finding of facts, as between Porter and the bank constituted Porter the owner of the stock formerly held by Ochs. A certificate of stock, which the stockholder might always have in his possession, would furnish convenient and accessible evidence of ownership, but it is not at all essential to the fact of ownership. And so the bank evidently regarded the transfer in this case, for Porter voted this stock at all elections of stockholders, drew the dividends thereon, and was elected a director of the bank, which could not legally have been done, unless he had been the owner of this stock. At the time, then, that the understanding and agreement between Porter and Gifford, set forth in the eleventh finding of facts, had their origin, Porter was the legal owner of the ten shares of stock in question. The most that can be claimed for this agreement between Porter and Gifford is that it created between them a latent equity or secret trust capable of enforcement as between the parties. There was nothing anywhere upon the books of the bank to advise third parties, proposing to deal with the stock, of the existence of this trust. Whilst matters remained in this condition, and sometime before January 15, 1873, Porter borrowed of S. T. Smith $1,200, and put up with him as collateral security therefor the said stock, assigning it to him by a transfer ticket, and an entry upon the transfer books, and delivered to him the transfer ticket received from Ochs. This was done before Smith had any knowledge of the transaction between Porter and Gifford. He advanced his money upon the faith of Porter's absolute unincumbered ownership of the stock. His position is similar to that of a mortgagee in good faith, without knowledge of a prior unrecorded mortgage. As between Porter and Smith, Smith simply acquired an equity or a lien. As between Smith and Gifford, the equity or lien of Smith is superior to that of Gifford. But as between Smith and the bank, Smith became the owner of the stock. It is true the by-laws of the bank provide that "no transfer of stock shall be valid except when made upon the books of the bank, and upon the return of the certificate to be transferred." This provision is intended to prevent the sale of outstanding certificates to innocent purchasers, when the

stock has been transferred upon the books of the bank. It is apparent that this provision is necessary to prevent the perpetration of frauds upon innocent third parties. But in this case Porter had no certificate of stock. There was no possibility of his transferring the stock on the books of the bank to one, and assigning his certificate of purchase to another. Besides, the provision requiring the surrender of the stock certificate is one which the bank may, at its peril, waive. Upon this subject, in *N. Y. & N. H. R. R. Co. v. Schuyler*, 34 N. Y., 30 (80), the following language is employed: "The non-production and surrender of the certificate at the time of the transfer is not fatal to the title of the transferee. It is only essential to the safety of the corporation, and may be waived by it at its own peril. The company has the means of knowing whether a certificate of particular stock is outstanding or not, and the power to compel its return and cancellation before any transfer is made, and a buyer, where the transfer is permitted by the corporation to be made on its books, by one to whose credit the stock is standing, has a right to presume that no certificate has issued, or if one has, that his vendor has duly surrendered it for cancellation." No certificate of stock having been issued to Porter, the bank was not guilty of any dereliction of duty in permitting a transfer of Porter's stock to Smith, upon the books of the bank. Smith became, as between him and the bank, the owner of the stock, and entitled to a certificate therefor, under the by-laws of the corporation. Whilst the relative rights of the parties remained in this condition, on January 15, 1873, Porter borrowed $1,200 of Charles Whitaker, to pay Smith, and for other purposes, and at the same time entered into an agreement in writing with said Whitaker, to sell to him said ten shares of stock for $1,600, if he should so elect in a given number of days, in which case he was to pay said Porter $400 in addition to the amount borrowed, and, if said Whitaker did not so elect the $1,200 was to be and remain a loan, and the stock collateral to it, and by said contract said Smith was to, and did, hold said stock as before as trustee for the parties, to execute and see that the agreement was carried out. This agreement was made and Whitaker ad-

vanced $1,200 before he knew anything of the arrangement between Gifford and Porter, concerning said stock. Upon these facts some of the members of this court entertain the following views: By this agreement and advancement Whitaker became entitled to all the rights of Smith to the extent of his advancement. Smith was, at that time, as between him and the bank, the owner of the legal title. In fact he was the owner of the legal title against all the parties to the transaction. Porter, however, had an equity, which he could assert or not, at his pleasure. If he failed to assert such equity Gifford could not as against Smith, for his equity was superior to Gifford's, and was coupled with the legal title. By the agreement Whitaker became entitled to all the rights of Smith, and was entitled to the transfer of the legal title to the stock on the books of the bank as collateral security for $1,200. If, thus entitled to the legal title, he began an action against the bank he could have compelled that to which he was legally entitled. The fact that the Bank, Whitaker and Smith, after Whitaker advanced the $1,200 and became entitled to the transfer of the stock, received notice of Gifford's equity, cannot change this result, because Whitaker was still entitled to the transfer of the legal title as collateral security for the $1,200. The Bank did voluntarily what it could have been compelled to do, and is not, therefore, liable to the defendant in any manner whatever.

The view, however, which is more satisfactory to the writer, is the following: By the agreement and advancement Whitaker became entitled to a transfer of the stock as collateral security for the amount of the loan. After Smith, Whitaker and Hiram Price, the president of the Bank, had notice from Gifford of the arrangement between himself and Porter in relation to said stock, the Bank permitted Smith to surrender, and have canceled, his certificate of stock, to transfer the stock on the books of the Bank to Whitaker, and issued a new certificate of the stock to Whitaker, who now holds the same. We need not determine whether Whitaker could, after notice of Gifford's claim, make any further payment, and acquire any rights to the stock, other than as a security for the $1,200 loan. If he could, he became entitled to an absolute transfer of the

stock, and to a certificate therefor, by his payment of the further sum of $400, under the agreement. If he could not, notwithstanding the transfer and issue of stock to him, he holds the balance thereof, above the sum of $1,200, in trust for Gifford. It may be that the bank, in permitting an absolute transfer and the issuance of a stock certificate to Whitaker, has vested in him a greater title than he is under the circumstances entitled to. But the bank ought not, because of this, to be held liable for the value of the excess of the stock, unless Gifford has sustained some damage by the bank's action.

It appears from the finding of facts that Whitaker still owns the stock. If he is not entitled to it absolutely, he holds the excess of it over $1,200 in trust for Gifford. If Gifford is entitled to any relief, he has a complete remedy against Whitaker. The bank ought not to be held responsible in damages, so long as it appears that its action has occasioned no injury. We unite in the opinion that the conclusion heretofore reached must be adhered to.