THE VICTOR GOLD & SILVER MINING CO., APPELLANT, *v.* THE NATIONAL BANK OF THE REPUBLIC ET AL., RESPONDENTS.

EXECUTION—REDEMPTION—FINDINGS OF COURT—OFFICER OF CORPORATION—AUTHORITY.

1. Plaintiff, a mining company, alleged that, from a sale on an execution against it, defendant bank had no right to redeem on a judgment against Groesbeck, on the ground that Clawson, who purchased at the execution sale, held the title to the mine in equity for Groesbeck, for the reason that Groesbeck was the president of the mining company, and advanced its money to pay the purchase price; and alleged further that in due time it duly tendered the money to redeem from the sale on execution from which the bank was permitted to redeem. *Held,* that the presidency of Groesbeck, the advance of the money of the mining company to pay the purchase price, and the tender by it of the redemption money, were essential and ultimate facts, and that the court should have found that they did or did not, respectively, exist.

2. *Held*, further, that, if Groesbeck was the president of the mining company, he could not bind the company by consenting to the sale of the property to Clawson, to be held for himself.

3. Also, *held*, that, when any officer of a corporation is acting partly for himself and partly for the corporation, notice to him will not affect the rights of the company.

(No. 800.   Decided July 10, 1897.)

Appeal from the First district court, Territory of Utah. W. H. King, *Judge*.

Action by the Victor Gold and Silver Mining Company against the National Bank of the Republic and others. Judgment for defendants. Plaintiff appeals. *Reversed.*

*Brown & Henderson*, for appellant.

Groesbeck could not be the purchaser. Any purchase by him was a redemption and a payment. *San Francisco Water Co. v. Pattee*, 86 Cal. 623; Thompson on Corp., vol. 3, secs. 4,072-3; *McAllen et al.* v. *Woodcock*, 60 Mo. 174; *Madgett* v. *Fleenor et al.*, 90 Ind. 517; *Wasatch Mining Co.* v. *Jennings et al.*, 5 Utah 243; *Koehler* v. *Black River Falls Iron Co.*, 2 Black 715.

If we look to the findings, we shall see that the main issue in this case the court has failed to find upon. The gist of the action of this plaintiff is that it tried to pay its debt by tendering the amount of money due, to-wit: $1075.75, on the 9th day of March. This tender is alleged in the complaint and denied in the answer, but nowhere in the findings is it mentioned or referred to. The absence of such finding on this material question is sufficient to set aside the judgment. *People* v. *Forbes*, 51 Cal. 628; Hayne on New Trial, secs. 239-241; *Campbell* v. *Buckman*, 49 Cal. 367; *Everson* v. *Mayhew*, 57 Cal. 144; *Cassidy* v. *Cassidy*, 63 Cal. 352.

This is irregular and improper. The only relief that

defendant could have if he was entitled to it was a dismissal of the plaintiff's complaint. Being out of possession, he could not file a bill to quiet title against the party in possession, but must file an action of ejectment. *Whittock v. Shattock*, 138 U. S. 150; *Lewis* v. *Cocks*, 23 Wall. 470; *Cates* v. *Allen*, 149 U. S. 451; *Frost* v. *Spitley*, 121 U. S. 552.

*Booth, Lee & Gray, Dey & Street*, and *Andrew Howat*, for respondent.

It is the general rule of equity jurisprudence that a fraudulent conveyance is good as against the fraudulent debtor or grantor and that the parties will be left in the situation in which they have placed themselves without aid from the courts. The decree establishes that the appellant was in *pari delicto* with the other defendants. Wait on Fraudulent Conveyances, secs. 395-398; *Bein* v. *Heath*, 6 How. 228-247; *Kitchen* v. *Rayburn*, 19 Wall. 254-263; *Creath's Admr.* v. *Sims;* 5 How. 192-204; *Frink* v. *Roe;* 70 Cal. 296-308; *Wier* v. *Day*, 10 N. W. 304.

Our statute of frauds only renders conveyances, made with intent to hinder, delay or defraud creditors, void as against the person hindered, delayed or defrauded. "It leaves the conveyance perfectly valid and binding as to the parties to it." II Comp. Laws of Utah, sec. 2838; *Rawson* v. *Fox*, 65 Ill. 200-206; *Barnes* v. *Railway Co.*, 122 U. S. 1-15.

The issues found sustain the judgment conclusively and no other findings are necessary. It is found by the trial court that the appellant was not at the time it began suit, nor at the time of judgment, either the owner or entitled to the possession of the property in dispute, and a series of ultimate facts are then found showing a complete title in respondent. Any finding as to the alleged tender would

be immaterial. *Groome* v. *Ogden City*, 10 Utah 54-59; *Chambers* v. *Emery*, 13 Utah 374; *Hanks* v. *Matthews*, 8 Utah 183; *Windhams* v. *Bootz*, 92 Cal. 617; *Dougherty* v. *Bank*, 81 Cal. 163; *S. P. R. R. Co.* v. *Dufour*, 95 Cal. 615; *Payne & Dewey* v. *Treadwell*, 16 Cal. 221-246.

But we contend that this court cannot review the alleged failure of the trial court to make a finding respecting the tender, for the reason that no exception was taken to the findings on that ground in the court below. *Lucas* v. *San Francisco*, 28 Cal. 591; *Calderwood* v. *Brooks*, 28 Cal. 151; *Warren* v. *Quill*, 9 Nev. 259; *James* v. *Williams*, 31 Cal. 211; *Tatum* v. *Massie*, 44 Pac. 494; 2 Comp. Laws of Utah, sec. 339'.

The appellant ignores our code and practice entirely, while citing cases relating to federal procedure only. It is well settled that in an action brought to quiet title a defendant out of possession may not only quiet his own title by cross-complaint, but may have a judgment for possession. 2 Comp. Laws of Utah, 1888, sec. 3468; 2 Comp. Laws of Utah, 1888, sec. 3182; *Winter v. McMillan*, 87 Cal. 264; *Kitts* v. *Austin*, 83 Cal. 172; *Castro* v. *Barry*, 79 Cal. 443.

ZANE, C. J.:

It appears from the pleadings and findings in this case that the plaintiff corporation was the owner of the four mining claims described in the complaint, and that by virtue of an execution issued upon a judgment against it in favor of Tucker & Wallace, they were sold to one Clawson, who received a deed from the sheriff; that afterwards J. M. Wheeler, G. W. Parks, and E. D. R. Thompson obtained judgment against the plaintiff for $805.25, and in aid of an execution issued thereon they filed a bill to set aside the deed and sale to Clawson on the ground the

money paid by him was furnished by the plaintiff, and that the sale and deed were made to Clawson to prevent the creditors of the plaintiff from collecting their debts. A default was entered, and the deed and sale were set aside, and the property was held to belong to the plaintiff, the mining company, and subject to the executions. The executions were levied upon them as plaintiff's property, and upon the sale Frank Knox, president of the National Bank of the Republic, became the purchaser, for $979.01. It further appears that the bank, by virtue of a judgment against William Groesbeck, and an execution thereon, redeemed from the sale to Knox, if the right to do so existed; and, the time for redemption from the bank having expired under the statute, the sheriff executed a deed to the bank. The foregoing facts were alleged in the pleadings and established by the findings of the court. Other facts are alleged in the pleadings, as to the existence and effect of which there is much controversy. The court below found the title to the property in dispute in defendant, and so decreed, and decreed further that the title of the bank should be quieted, and granted a writ of possession. From the decree the plaintiff has appealed, and assigns numerous errors upon the exceptions to the rulings of the court, and to its findings. The appeal was not taken in time to allow us to review the exceptions to the decision on the ground it was not supported by the evidence.

The plaintiff claims it had the right to redeem, under subdivision 1 of section 3443, Comp. Laws Utah 1888, from the sale on the execution of Wheeler *et al.*; and the bank claims it had the right to redeem as redemptioner under the second subdivision of the same section, and that its redemption was valid in law and in equity. The section is as follows: " Property sold subject to the re-

demption as provided in the last section, or any part sold separately, may be redeemed in the manner hereinafter provided by the following persons or their successors in interest: (1) The judgment debtor, or his successor in interest in the whole or any part of the property. (2) A creditor having a lien by judgment or mortgage on the property sold, or on some share or part thereof, subsequent to that on which the property was sold. The persons mentioned in the second subdivision of this section are in this chapter termed redemptioners." It appears from the findings that the executions by virtue of which the sale was made from which the Bank of the Republic redeemed was issued on a judgment against the plaintiff and the property sold was levied on as plaintiff's. But the bank claimed on the trial of this case that the sale to Clawson and the sheriff's deed to him passed the legal and equitable title, and the decree in aid of the Wheeler, Parks, and Thompson executions only set that sale and deed aside as to the execution in favor of Wheeler, Parks, and Thompson, and left the title subject thereto in Clawson, in trust for Groesbeck, and that the bank by virtue of its judgment against Groesbeck acquired a lien, by virtue of which the bank was a redemptioner, with the right to make the redemption on which it relied, and, further, that plaintiff, having been divested of its title, had no longer any right to redeem as a judgment debtor. The bank places its right to redeem by virtue of the judgment against Groesbeck (1) on the ground that the plaintiff agreed with Groesbeck and Clawson that the latter should buy the property at execution sale, and the deed should be made to Clawson, and the property held in trust for Groesbeck; (2) because Groesbeck advanced the money which was paid by Clawson upon the purchase; (3) because the plaintiff allowed the sale to remain un-

questioned, and took no steps to set the deed or sale aside, for 21 months; (4) because of the apparent acquiescence of the plaintiff, the defendant expended money in establishing Groesbeck's title to the property.

The answer of the mining corporation to the cross complaint of the bank denied the above facts relied upon by the bank, and in its complaint, as amended, and in its answer to the cross complaint of the bank, the plaintiff alleged that Groesbeck, before and when the transactions upon which the bank relies occurred, was the president of the mining corporation, and while president he caused his son-in-law, Clawson, to bid off the property for the sum of $176, which was furnished to Clawson by Groesbeck out of the funds of the plaintiff, and paid by him for the property; that the purchase was made fraudulently by Clawson, with the advice of Groesbeck, for the purpose of defrauding the plaintiff of its property; and that the officers of the plaintiff, except its president, knew nothing of the sale, or the fraudulent purposes and action of Groesbeck and Clawson. The plaintiff also alleges that the decree in favor of Wheeler, Parks, and Thompson set the deed and sale to Clawson aside as to the plaintiff, as well as to the plaintiffs in that case; that plaintiff made a lawful tender of the amount necessary to redeem from the sale on the Wheeler, Parks, and Thompson executions, and denied the validity of the sheriff's deed to the defendant; and denied that Groesbeck had any authority to file an answer for the plaintiff, or to answer for it. The plaintiff also alleged that Groesbeck was acting for himself, in hostility to the interest of plaintiff, and without authority to bind it by any of the admissions or agreements alleged by the bank, and denies any consent that the property might remain in Clawson, or acquiescence therein, or that the plaintiff was estopped from

asserting its title to the property. The allegation that Groesbeck was the president of the mining company was essential to the plaintiff's cause of action, and to the defense set up in the answer to the defendant's cross complaint. If Groesbeck was president of the Victor Gold & Silver Mining Company, he could not consent, for the plaintiff, to the sale of its property to Clawson, to be held in trust for himself. The law will not permit an officer of a corporation to act for the company and for himself in making any contract between them, or in any transaction to the subject-matter of which they may have, or may thereby acquire, conflicting interests. In such case the agreement or assent of the officer will not bind the company. Officers of corporations are bound to exercise their official powers in the utmost good faith for the benefit of their principals, in making or consenting to any transaction, and the law will not allow them, as to the same transaction, to act for their own benefit. The agent cannot act for himself and his principal as to anything with respect to which their interests may vary. The reason is that self-interest may prevent him from the performance of the duties he owes his principal. 4 Thomp. Corp. §§ 4657, 4658, 46 0; *Claflin* v. *Bank,* 25 N. Y. 293; *Bank* v. *Gifford,* 47 Iowa 575.

When the officer is acting partly for himself and partly for the corporation, a notice to him does not affect the corporation. In section 4657, Thomp. Corp., the rule is stated: " But it should be borne constantly in mind that the cases where a notice to the president or any officer of a corporation will affect the corporation are cases where such president or officer is acting exclusively for the corporation. In cases where they are acting partly for the corporation and partly for themselves, a notice to them does not affect the corporation, because the fact

that their personal interest is opposed to that of the cor-
poration may induce them to withhold the information
thus communicated from the directors, or from the appro-
priate corporate officer.   In receiving a communication
under such circumstances the president or other officer
is held not to represent the corporation, but to represent
himself only."

The allegation in plaintiff's complaint that Groesbeck
was president of the mining company at the time the sale
and the deed to Clawson were made, and when he filed
the answer for himself and for the plaintiff to the com-
plaint of Wheeler and others to set the deed and sale
aside, and when he withdrew it, and during the time of
the acquiescence and admissions of Groesbeck and the
plaintiff, relied upon by the bank, is one of the facts al-
leged by the plaintiff as its cause of action.   It was an es-
sential fact, not an evidentiary fact to prove a primary
or essential fact.   This fact, with the other facts alleged
by plaintiff, constituted its cause of action.   The facts al-
leged by the plaintiff necessary to his cause of action
should always be found, but facts merely affording an
inference of the truth of indispensable facts need not be
found.   If Groesbeck was president of plaintiff, and was
acting for himself in procuring Clawson to purchase and
hold plaintiff's property in trust for himself, such agree-
ment with Clawson was fraudulent.   Such acts of the
president would not bind his principal, the mining com-
pany.   The facts of Groesbeck's presidency was also
essential to plaintiff's defense as stated in its answer to
the bank's cross complaint.   The allegation that the
money paid by Clawson on the puchase was ad-
vanced to him by Groesbeck from plaintiff's money was
also a fact essential to plaintiff's case, and its de-
fense to the bank's cross complaint.   There is no express

or direct finding as to this fact. There is a finding to the effect that Groesbeck advanced the money, but there is no direct finding that the Clawson purchase was not paid with plaintiff's money. If the mining company's money was used, a trust resulted in its favor. The plaintiff also alleged in its complaint, and in its answer to the cross complaint of defendant, an offer to redeem from the sale to Knox upon the Wheeler execution, and a tender in due time of the amount necessary to redeem. As to this allegation there is no finding. The finding that there was no redemption was not sufficient. The Victor Gold & Silver Mining Company, being a legal person, could not act except through natural persons,—its directors or other officers. The powers of these officers were defined and limited by its charter and by-laws. The directors, within the scope of their authority, were authorized to direct and transact the business of their principals. The court did not find that the board of directors consented to or acquiesced in any of the transactions of the plaintiff complained of; nor is it found that the stockholders at any meeting authorized or ratified any fraudulent acts, or were guilty of negligence in any respect. Before holding that the company should be deprived of its property, it should appear that its directors authorized the acts which the defendant relies upon, or that they made the admissions, or authorized them, or that they acted or failed to act in such a way as to estop the plaintiff from asserting its right to its property, or that its president was authorized to do so. For the reasons stated, we hold that the court below failed to make any sufficient finding upon the facts and issues pointed out.

Inasmuch as the evidence upon which the court made its findings is not before us, we will not decide whether the decree in the case of Wheeler and others set the sale

and deed to Clawson aside as to the plaintiff, or as to the effect of filing the answer by Groesbeck for himself and the plaintiff, and the withdrawal of it. Such determinations can be better made by the court below upon a retrial in the light of all the evidence bearing upon them. Other errors are assigned, but, in view of the fact that the case must be retried, we do not think it necessary to consider the case further in this opinion. For the reasons stated the decree appealed from is reversed, and the cause is remanded to the court below, with directions to set aside the findings upon which the decree was based, and to retry the case upon the evidence taken, so far as competent, relevant, and material, and upon such further legitimate evidence as may be offered by either party.

BARTCH and MINER, JJ., concur.